(No. 6433.   November 19, 1937.)

SAMUEL CREEM, Trustee for the Creditors of CHARLES A. RAMBO and CHARLES A. RAMBO, Respondents, v. NORTHWESTERN MUTUAL FIRE ASSOCIATION OF SEATTLE, WASHINGTON, a Corporation, Appellant.

[74 Pac. (2d) 702.]

J. F. Martin, for Appellant.

Geo. Donart and Ed. R. Coulter, for Respondents.

GIVENS, J.—This case was here on the merits on a previous appeal and we reversed the judgment and remanded the cause "for a new trial." (*Creem v. Northwestern Mut. Fire Assn.*, 56 Ida. 529, 56 Pac. (2d) 762.) The case was tried again *de novo* and judgment was rendered for the plaintiff and it is here again on appeal on the merits.

It is first contended that the trial court did not follow our former decision as to the law of the case. A very careful examination of the rulings of the court and the instructions given the jury satisfies us that appellant is in error in its contention in this respect; and that the trial court did in

fact have a very clear understanding of our former opinion and followed it in all substantial respects throughout the trial and in the instructions as well. The facts of the case are set out in sufficient detail in our former opinion to serve our purposes here in dealing with all the issues tendered on this appeal.

In our opinion on the former appeal it is said:

"The evidence herein is insufficient to prove that the merchandise was included in the chattel mortgage by mutual mistake."

Appellant argues that by the foregoing holding, as to the insufficiency of the evidence, we adjudged that there was no sufficient evidence to support the charge that the merchandise, covered by the mortgage to the Nampa Weiser Company and Shellhaas, was described and included in the mortgage by "mutual mistake"; and that such holding became *res judicata* or the law of the case. The weakness of this contention lies in the fact that, instead of withholding that issue from consideration on a new trial, we ordered a new trial on the whole case. In that state of the case this issue as well as all others was open for trial anew as if it had never been tried. (*Little v. Brown*, 40 Ariz. 206, 11 Pac. (2d) 610; 5 C. J. S. 1549, sec. 1989.).

Of course if the proofs on a second trial should be the same as upon the first trial, on which the evidence was held insufficient to support the judgment, the appellate court would feel bound on the second appeal to follow the ruling on the first appeal. But if other or different proofs are presented on the second trial, the appellate court will give it an independent examination as on an original appeal. Where a judgment is reversed and the case is remanded to the trial court "for a new trial," the case comes on for trial the same, in all respects, as if it had never been tried, subject to this condition, however, that it must be tried in the light of and in consonance with the rules of law as announced by the appellate court in that particular case. This is what we call "the law of the case." (*Ryan Gulch Reservoir Co. v. Swartz*, 83 Colo. 225, 263 Pac. 728; *Rebold v. National Supply Co.*, 133 Okl. 140, 271 Pac. 852; *Little v. Brown*, 40 Ariz. 206, 11 Pac. (2d) 610; *Colby v. Daniels*, 151 Okl. 89, 1 Pac. (2d) 693;

*Godefroy v. Reilly,* 140 Wash. 650, 250 Pac. 59, at 62; *Adams v. Kennard,* (Or.) 222 Pac. 1092, at 1094; *Corporation of Members of Church, etc., v. Watson,* 27 Utah, 538, 76 Pac. 706; *Mattock v. Goughnour,* 13 Mont. 300, 34 Pac. 36.) The decisions of this court cited and relied on by appellant are in entire harmony with the rule here stated. (*Hall v. Blackman,* 9 Ida. 555, 75 Pac. 608; *Gerber v. Nampa & Meridian Irr. Dist.,* 19 Ida. 765, 116 Pac. 104; *Richards v. Jarvis,* 44 Ida. 403, 258 Pac. 370; *Phy v. Edgerton,* 44 Ida. 530, 258 Pac. 545; *Vinyard v. North Side Canal Co., Ltd.,* 47 Ida. 272, 274 Pac. 1069.)

▮ As to respondent's argument that the clause in the policy reading:

" . . . . if the hazard be increased by any means within the control or knowledge of the insured . . . . "
has no reference to the giving of a chattel mortgage on insured property, our former decision, 56 Ida. 529, 56 Pac. (2d) 762, is the law of the case which the trial court followed.

▮ Appellant contends the evidence is insufficient to prove that the merchandise was included in the chattel mortgage by mutual mistake and that the evidence of mistake was not as strong on the second trial as at the first. The same witnesses testified as to this feature of the case except Mr. Shellhaas who was one of the mortgagees and did not testify at the former trial, did at the second trial, and Mrs. Shellhaas who acted as his agent in connection with the taking of the mortgage testified at the first trial but not at the second. In the second trial therefore, there was the testimony of both mortgagees and the mortgagor that it was their intention and understanding that the mortgage was not to cover the stock of goods and merchandise. This court has laid down the following test for determination of the sufficiency of the evidence under these circumstances:

"It is next contended by appellant 'that plaintiff did not establish beyond a reasonable doubt by clear, satisfactory and convincing evidence that there was a mutual mistake in reducing the contract to writing' and that, therefore, the court erred in finding that a mistake had been made and in entering judgment for a reformation of the contract. Appellant

contends that in such cases the rule is that before a reformation can be had on the ground of mutual mistake that the 'mistake must appear beyond a reasonable doubt.'

"Counsel cites something like a hundred authorities in support of this contention. We are not going to review these authorities or again enter into any extended discussion of this question. This court has adopted and followed a different rule in such cases. This proposition was advanced in *Morrow v. Matthew*, 10 Ida. 423, 79 Pac. 196, and the court went into the question at some length and discussed the origin of the rule. It was there pointed out that the rule was first adopted by courts of chancery when the evidence was taken before a master and the witnesses did not appear before the court. Attention was also called to the other rule which has been adopted by the courts and which in this state has been crystalized into statute (sec. 4824, Rev. Codes), that where witnesses appeared and testified before the court and the court has seen and had the opportunity of observing the witnesses in the case, the findings and judgment of the court upon conflicting evidence will not be disturbed if there is any substantial evidence to support the judgment. Among other things, this court said:

" 'Where, however, the record discloses such facts that a fair and reasonable person might conclude therefrom as to the execution, terms and conditions of the contract, I do not see how an appellate court is justified in saying that it did not appear clearly and satisfactorily to the trial court. Evidence entirely clear and convincing to the trial court who saw and heard the witnesses might, when in cold type upon the record, leave doubts in the minds of the members of the appellate court, but I do not think they should reverse the judgment on such grounds. The rule is one by which the trial court primarily weighs the evidence, and unless substantially departed from by him in arriving at his decision should not become one of original application on appeal.' (See discussion in *Southard v. Curley*, 134 N. Y. 148, 31 N. E. 330, 30 Am. St. 642, 16 L. R. A. 561.)

"Substantially the same rule that was adopted in the Morrow case has been followed by this court in a number of other cases. (*Commercial Bank v. Lieuallen*, 5 Ida. 47, 46

Pac. 1020; *Stuart v. Hauser,* 9 Ida. 53, 72 Pac. 719; *Robbins v. Porter,* 12 Ida. 738, 88 Pac. 86.) Since the decision in the Morrow case, the legislature amended sec. 4824 of the Revised Statutes of 1887 by adding the proviso now contained in that section as it appears in the Revised Codes, and reading as follows: 'Provided, that whenever there is substantial evidence to support a verdict the same shall not be set aside.' The proviso makes no distinction among civil cases but applies to all civil actions alike. In this connection it must also be remembered that a jury may be called to pass on the facts in an equity case as well as a law case." (*Panhandle Lumber Co. v. Rancour,* 24 Ida. 603, 135 Pac. 558.)

The court instructed the jury as to this phase of the controversy as follows:

"Instruction No. 6

"You are instructed that where it is alleged that a written instrument such as a chattel mortgage, through the mutual mistake of the parties thereto does not express the true intention of the parties, the burden is upon the person making such allegation to establish the asserted mutual mistake not simply by a preponderance of the evidence, but by clear and convincing evidence that all parties intended the instrument to provide other than it did."

The evidence in the second trial was materially different from the first in that in the second trial all parties to the mortgage testified, whereas in the first trial one of the mortgagees did not and we cannot say that this evidence was not sufficient to justify the jury in rendering the verdict it did under the instruction given. (*Bedal v. Johnson,* 37 Ida. 359, at 374, 218 Pac. 641; *Exum v. Portneuf-Marsh Valley Irr. Co.,* 38 Ida. 155, 220 Pac. 112; *Andrews v. Aikens,* 44 Ida. 797, at 803, 260 Pac. 423, 69 A. L. R. 8; *Creem v. Northwestern Mut. Fire Assn., supra,* at 536 of Idaho Reports.)

The judgment is therefore affirmed with costs to respondent.

Morgan, C. J., and Holden, J., concur.

AILSHIE, J., Dissenting in Part.—I am unable to agree with that part of the opinion of Justice Givens wherein it is

contended that the evidence is sufficient to prove clearly and satisfactorily that "the merchandise" was included in the chattel mortgage by "mutual mistake." I have read and examined the transcript of the evidence most carefully as given at the first trial and also at the second trial and am prepared to say that, in my opinion, the evidence as to mutual mistake, as given on the second trial, is not as strong as it was on the first trial. The same witnesses were called on the second trial who testified on the first trial with the following exceptions: Almon J. Hall died prior to the second trial and his testimony given on the first trial was read to the jury in the second trial. Mrs. Shellhaas, who testified on the first trial, was not present at the second trial and her testimony given at the first trial was not read to the jury. Mary Werneth, recorder of the county, did not testify on the first trial but was called on the second trial to simply identify the Rambo chattel mortgage. Mr. Shellhaas who did not testify at the first trial testified at the second trial, but the entire gist of his evidence was merely that Mrs. Shellhaas had full authority to act for him in all respects in reference to his claim which was secured by this mortgage. His entire testimony as given on the second trial is as follows:

"Q. State your name to the jury.

"A. George Shellhaas.

"Q. And where do you reside?

"A. Weiser, in the Wulff building.

"Q. What is your business?

"A. Bakery business.

"Q. In Weiser?

"A. Weiser, yes, sir.

"Q. Are you the George Shellhaas, one of the mortgagees in the mortgage given by Charles A. Rambo as mortgagor to the Nampa Weiser Company and George Shellhaas on May 6, 1932.

"A. We have a mortgage. I could not say the date.

"Q. You are that George Shellhaas?

"A. Yes, sir.

"Q. You operate a bakery?

"A. Yes, sir.

"Q. Are you married?

"A. Yes, sir.

"Q. Give your wife's name?

"A. Luella.

"Q. In the operation of the bakery business what part of the business is delegated by you to Mrs. Shellhaas to attend?

"A. She has charge of the sales department and book .work.

"Q. Do you attend to any of those things?

"A. No, sir.

"Q. What part of the business do you attend to?

"A. The bakery end and buying materials.

"Q. In the making of collections, who attends to that?

"A. Mrs. Shellhaas.

"Q. And in taking the mortgage from Mr. Rambo, who attended to that for you?

"A. Mrs. Shellhaas.

"Q. Did she have full authority to represent you in that matter?

"A. She did."

Mr. Creem, who represented the other mortgagee, testified that he called Mrs. Shellhaas by telephone and talked with her in reference to this matter and he was asked the question, "Will you tell the jury what you told Mrs. Shellhaas was to be incumbered by that mortgage." Objection was made to this question on the ground it was hearsay, and objection was overruled. He then answered:

"I told Mrs. Shellhaas we were up there to draw a mortgage for the debt owed by Rambo; that is, I supposed it was money—mentioned as due from the Rambo business, and, that the mortgage was going to be taken on the truck and the fixtures to secure it."

He was then asked: "And what did she say," to which he replied:

"She said 'Alright, you go ahead and I will leave it all to you.' That is my best recollection of what she said."

Now it is apparent that the foregoing testimony of Creem did not prove anything and it was objectionable as unmistakable hearsay and was not a conversation that took place in the presence of a representative of the plaintiff nor was it a

conversation that took place *between the mortgagor and mortgagee*. This was merely a telephone conversation purporting to have taken place between the *agents of the two mortgagees,* and it is now offered and admitted to bind the insurance company in a suit in which both the mortgagor and mortgagees are interested in securing a judgment against the insurance company for loss which occurred by fire destroying the property covered in the mortgage, as actually made and signed by the mortgagor. It contravenes all known rules respecting the exclusion of hearsay evidence. (*Kier v. Hill,* 8 Ida. 111, 114, 66 Pac. 931; *Whitman v. McComas,* 11 Ida. 564, 570, 83 Pac. 604; *Mabb v. Stewart,* 147 Cal. 413, 81 Pac. 1073, 1076; 10 R. C. L., p. 960, secs. 132–134; 3 Wigmore on Evidence, secs. 1361, 1362.) While Rambo, the mortgagor, may have heard what Creem said at his end of the telephone line, he had no way of knowing what Mrs. Shellhaas said in reply except as told him by Creem. The very fact that Creem was even talking to Mrs. Shellhaas is only known to Rambo or anyone else, except Mrs. Shellhaas, through hearsay. Certainly his repetition of this telephone conversation was the purest hearsay.

I cannot yield my approval to the contention that such evidence is competent or even admissible to prove that a mutual mistake was made, where the written mortgage was executed by the mortgagor to the mortgagees on the very date, and almost at the very moment, this supposed conversation took place and which covered property it is now claimed was not intended to be covered by the mortgage. It seems to me that the law on this subject to too well settled to provoke controversy; furthermore, as it applies to this case the former opinion (56 Ida. 529, 537, 56 Pac. (2d) 763) is the law of the case and in this respect is *res judicata.*

Budge, J., concurs.