744 P.2d 86

**Patricia Louise VERNON,
Claimant-Appellant,**

v.

**OMARK INDUSTRIES, Employer,**

and

**State Insurance Fund, Surety,
Defendants-Respondents.**

**No. 16559.**

Supreme Court of Idaho.

Sept. 23, 1987.

Aherin, Rice & Brown, P.A., Lewiston, for appellant, Patricia Vernon. Charles A. Brown, argued.

Evans, Keane, Koontz, Boyd & Ripley, Boise, for respondent, Omark Industries and Idaho State Ins. Fund. M. Karl Shurtliff, argued.

DONALDSON, Justice.

This is an appeal by claimant, Patricia Vernon, from an Industrial Commission order denying her claim for benefits. The issue we address today is whether the commission's ruling that claimant had not sustained her burden of proof in showing that her injury arose out of and in the course of employment is correct. We conclude the commission failed to adequately state how it ultimately came to its conclusion, and we, therefore, vacate its decision and remand.

Patricia Vernon had been employed by Omark Industries for approximately nine years working primarily as a material handler in the shipping department. Her work consisted of repeatedly moving and lifting wooden trays filled with primers, each tray weighing from twenty-eight pounds to in excess of fifty pounds. Claimant testified that some time in the middle of June, 1983, while at work, she started to experience

pain in her lower back. She did not remember any particular incident that could have caused the onset of pain, nor could she pinpoint the day the pain began. She testified that she thought she first experienced it on the thirteenth of June, but acknowledged that it could have occurred either on June 14, or June 15. In her application for a hearing before the Industrial Commission, she stated that the date of injury was June 13, 1983 to June 23, 1983, during work hours.

Claimant did not immediately notify her supervisor of the incident. She was aware of the plant's safety rules and shipping department regulations which require that any accident, no matter how small, be reported to the employee's supervisor immediately. Claimant continued to work her normal work schedule until June 24, 1983, which was her day off. At that time she went to see Dr. Skinner, a chiropractor, for the pain in her back. The claimant was seen by Dr. Skinner on twelve occasions for treatment of her back condition. Feeling unsatisfied with Dr. Skinner's treatment, the claimant visited Dr. A.G. Johnson, a general practitioner. Dr. Johnson prescribed Feldene to alleviate the back pain. After one week and no pain reduction, claimant scheduled an appointment with Dr. Colburn, an orthopedic surgeon. Claimant was examined in Dr. Colburn's office by Betty Imthurn, a nurse practitioner. Claimant indicated to her that the onset of the pain occurred approximately five weeks before (middle of May, 1983) and was unrelated to any particular activity or incident. Claimant reported to have had low back pain off and on for at least five to six years. Imthurn directed the claimant to take several weeks off from work. Claimant notified her supervisor that she needed the time off, but did not then assert that it was needed as a result of any work-related accident or injury.

Claimant next visited Dr. Warren J. Adams of Spokane, Washington, whose speciality was orthopedic and spine surgery. Dr. Adams testified that the claimant stated she first noted back pain approximately six weeks earlier (around the middle of June) and before that had had no pain in her back or legs. Subsequently, at Dr. Adams' direction, a myelogram and CT scan were performed on claimant. The test revealed a herniated disk for which Dr. Adams performed surgery. Claimant's condition improved after the surgery and she was able to return to work by early January of 1984.

Claimant first notified her employer of an industrial accident on August 4, 1983, nearly two months after the initial onset of pain. She reported that she had a herniated disk in the low back caused by the lifting of wooden trays. Although claimant had been treated by Dr. Skinner beginning June 24, 1983, she did not report this treatment to her employer. She testified that she was attempting to take care of the problem herself, and was concerned that if the accident was reported she might be dismissed from her work or otherwise disciplined because she had had several other previous leaves of absence.

After a hearing before the Industrial Commission, the commission issued Findings of Fact, Conclusions of Law and Order on June 11, 1986. After extensive statements of the facts (which are restated above) the commission made the following scant Conclusion of Law.

"The Claimant has not sustained her burden of proof that she suffered a personal injury to her back arising out of and in the course of her employment with Employer as she alleges in this proceeding."

Our scope of review on appeal from the findings of the commission is well settled. We are to determine whether the commission's factual findings are supported by substantial and competent evidence and, if so, we must affirm them. Idaho Const., art. 5 § 9, I.C. § 72–732, *Neufeld v. Browning Ferris Industries*, 109 Idaho 899, 712 P.2d 600 (1985). However, when questions of law are raised it is for this Court to decide them *de novo*. In the instant case, the commission did not explain the rule of law under which they were operating. They merely stated that the claimant did not meet her burden of proof.

**360**

We cannot ascertain whether the commission simply did not believe the testimony of the claimant's doctors or her own testimony, or placed a greater weight on the conflicting evidence, or believed the claimant's testimony, but applied a rule of law to reach its determination. It is not our function to guess the reasoning of the commission. We cannot determine that the commission acted properly, or improperly, in reaching its conclusion. Thus, we must vacate its decision and remand to clarify its rationale. With our restrained review of the commission's factual findings, it becomes essential that the commission's conclusions of law not be shrouded in ambiguity.

■ The commission has wide discretion in making factual determinations, and we will use a clearly erroneous standard in reviewing these determinations. However, before an appellate court can properly determine whether the commission's findings were clearly erroneous, it must determine whether the correct legal standard governing the available discretionary alternatives was applied. Here, we do not know whether the commission simply disbelieved the claimant, or whether they believed the claimant but determined that a rule of law prevented her from sustaining her burden of proof. This decision cannot be made at the appellate level. As our Court of Appeals has stated in a similar context:

> "However, it is one thing to hold that discretion has been exercised by reference to a misunderstood legal standard; it is quite another to usurp such discretion by deciding the issue anew at the appellate level. We have held that when a trial judge erroneously applies the law when making a discretionary decision, the appropriate appellate response is to remand the case for reconsideration under the clarified legal standard." *In the Matter of the Estate of Kunzler,* 109 Idaho 350, 355, 707 P.2d 461, 466 (Ct. App.1985).

■ On remand, the issue the commission needs to focus on is whether the claimant sustained her burden of proving her injury resulted from an accident, as defined in I.C. § 72–102(14)(b), which arose out of and in the course of employment. The controlling law is contained in the worker's compensation statutes. I.C. § 72–102(14) defines "injury" as a personal injury caused by an accident arising out of and in the course of employment. An "accident" is defined as "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." I.C. § 72–102(14)(b). Our case law indicates that the claimant's proof must establish a probable, not merely a possible, connection to the cause and effect to support a contention that the compensable accident occurred. *Callantine v. Blue Ribbon Linen Supply,* 103 Idaho 734, 653 P.2d 455 (1982).

With this rule of law in mind, the commission must then examine the relevant facts to determine whether the claimant has sustained her burden of proof. As we stated in *Neufeld:*

> "The determination of whether a particular injury arose out of and in the course of employment is a question of fact for the commission. [Citation omitted.] Such a determination necessarily involves weighing the evidence and assessing the credibility of the various witnesses, and is therefore committed to the expertise of the commission. The commission's conclusions as to the weight and credibility of the evidence will not be disturbed on appeal unless they are clearly erroneous. [Citation omitted.]" *Neufeld, supra,* 109 Idaho at 902, 712 P.2d at 603.

■ To aid in appellate review, the commission must, when faced with contrasting factual allegations, find the facts, based upon the evidence it believes to be more credible. Here, the commission simply recited the conflicting evidence presented without resolving the factual conflicts. In short, the commission's factual findings and conclusions of law are incomplete and need to be expanded before we can properly exercise our appellate review function. Accordingly, we vacate the commission's

decision and remand back to the commission with the instruction that it make more detailed factual findings and conclusions of law to support its ultimate holding.

Costs to appellant.

No attorney fees on appeal.

BAKES, BISTLINE and HUNTLEY, JJ., concurs.

BENGTSON, J., pro tem, concurs in result.

BISTLINE, Justice, concurring specially.

In *Wynn v. J.R. Simplot Co.*, 105 Idaho 102, 666 P.2d 629 (1983), Chief Justice Shepard authored a good decision. The claimant in that case over most of his life span had suffered various types of repetitive trauma, as was well pointed out in the dissenting opinion of Justice Bakes. That repetitive trauma certainly would have provided Mr. Wynn with a back that was more prone to disabling injury which he did unfortunately suffer one day. But, fortunately for him, the severity of a jolt, caused the physical injury to his spine to be brought immediately to his attention at a precise time.

The basis issue in that case was his pre-existing back condition which resulted from all of the trauma suffered earlier. The basic holding of the case was, as stated by Justice Shepard, "... our compensation law does not limit awards to workmen who, prior to injury, were in sound condition and perfect health. Rather, an employer takes an employee as he finds him." *Wynn*, 105 Idaho at 104, 666 P.2d at 631.

In the *Wynn* case, this Court first specifically observed that the Commission had held against him because, *even at surgery*, the ruptured disc was not identified. But, the opinion goes on to point out that at a second surgery, the rupture was found, and not only found, but repaired. This had been called to the attention of the Commission on a motion for reconsideration. This Court's opinion attributed the Commission's denial of that motion to "its view that Wynn's life had been very physically active, ... and, hence, his spine had,

through repeated trauma, became predisposed to the injury which he ultimately sustained." 105 Idaho at 104, 666 P.2d at 631.

The real teaching of the *Wynn* case is that where a working person's back has been exposed to repetitive trauma, and *disabling* pain suddenly manifests itself, it not only can, but does, result from an injury to the spine. Of more importance is the fact that the injury producing the sudden onset of pain is not always, and perhaps not even often, readily located by the injured person in a pinpointed area of the back. Moreover, it was not discovered at surgery by a back specialist, even though he had laid open and exposed the spine to view. 105 Idaho at 103, 666 P.2d at 630.

What the *Wynn* case teaches as a matter of case law is only what we justices as ordinary individuals either know by experience or from others, i.e., a person can injure his back, feel the pain to varying degrees, and yet not comprehend the severity of the injury until a much later time, perhaps occasioned by the increasing severity of the injury.

Repetitive trauma such as regular heavy lifting is a type of activity which may in time, as in *Wynn*, predispose any person's back (spine) to injury. Until the ultimate injury does take place, it would not be uncommon to suffer back aches, most of which would be ordinarily attributed to muscle fatigue, wear and tear, and much of which would be indistinguishable from the ultimate injury of a ruptured or nerve-impinging disc protrusion. In those circumstances the particular employee who while doing such heavy lifting who experiences disabling pain, is not going to have the knowledge to identify its source. Only when it persists after a layoff, can the employee then, on reflection, think back and try to identify any exact time when it is believed that an injury has taken place. Most working people can be expected to want to remain on the job, not because they enjoy the heavy lifting and concommitant back pain, but because the pay check is a necessity. They are not kennel hounds, but motivated workers.

Repetitive trauma sets the stage for an injury to occur, as per *Wynn*, and, in the absence of any evidence, any other activity to which the surety or the employer can point, and which is attributable as being the culprit—it is only reasonable and fair to conclude that the ultimate injury was job-related. The legislature has only required that it be reasonably located as to time and place. It would be improper for the Commission or this Court to require more of a heavy-lifting claimant than a best recollection.

At the same time, it must be kept in mind that any orthopedic surgeon, including a back specialist, can say, truthfully, that it is *possible* that a disc injury is attributable to the natural aging process of degeneration. Anything is possible, and also probable.

In the final analysis, in these cases, the answer is to be found, as Justice Huntley suggests, by eliminating other possible causes for which there is no supporting evidence.

HUNTLEY, J., concurs.

HUNTLEY, Justice, concurring specially.

I agree that this case should be remanded to the Industrial Commission for more appropriate and specific findings of fact and conclusions of law. The commission merely stated that the claimant did not meet her burden of proof in showing that her injury occurred while on the job and failed to make any specific finding as to whether it is more probable from all of the evidence that the injury occurred either on the job or off the job. The commission was presented with what appears to be ample testimony that the only stress applied to claimant's back occurred at the job site. Further, there was no testimony that claimant's herniation was solely caused by the aging process.[1]

There is ample testimony which, if believed, does satisfy claimant's burden of proof. Of course, the commission is entitled to find that the testimony was not credible and therefore reject it, but it did not so find. It is for these reasons that I concur in this opinion remanding this case to the commission for specific findings as to what it determines to be the more probable cause of the herniated disk.

However, I would also like to highlight what I believe to be the major problem source in cases of this kind. As stated in the majority opinion, I.C. § 72–102(14)(b) requires that before a claimant may recover for an accident or injury occurring in the work place or on the job, such accident or injury must be "reasonably located as to time when and place where it occurred." Simply put, the statute does *not* require a plaintiff to pinpoint an exact time when the injury occurred, but only a reasonable estimate of such. Indeed, in unique cases such as this, where a claimant has, in all likelihood, suffered an injury as a result of cumulative and repeated stress or trauma, it would simply be unfair and unreasonable to require the impossible of a claimant who is not able to pinpoint one exact date upon which such an injury or accident occurred.

Prior to the 1971 comprehensive amendment of the workmen's compensation law, I.C. § 72–201 (the predecessor of the present I.C. § 72–102(14)(b)) read: "Accident" as used in this law, means an unexpected, undesigned, and unlooked for mishap, or untoward event, *happening suddenly* and connected with the industry in which it occurs and which can be *definitely located* as to time when and place where it occurred, causing an injury as defined in this law." (Emphasis supplied). By deleting the words "happening suddenly," and supplanting the words "definitely located" by the words "reasonably located," it is evident that this state's legislature meant

---

1. In his concurrence, Justice Bistline persuasively notes that "it must be kept in mind that any orthopedic surgeon, including a back specialist, can say, truthfully, that it is possible that a disk injury's attributable to the natural aging process of degeneration." By so stating, Justice Bistline highlights a truism which often tends to confuse the issue in back injury cases. Every claimant,

and, indeed, every person is continually affected by the aging process. To hone in on that process without at least some substantial evidence showing that the injury was not caused by, or exacerbated by, more than just the aging process would be to do a gross disservice to all claimants in back injury cases.

to require of the claimant only such proof as to time when and place where any injury occurred as was reasonably possible.

Also of some importance is the fact that this Court has long recognized that justice and fairness require that, in cumulative injury cases, the claimant is not required to pinpoint an exact date of an injury or accident.

In *Reinoehl v. Hamacher Pole and Lumber Co.,* 51 Idaho 359, 6 P.2d 860 (1931), this Court ruled that a claimant who had died of Rocky Mountain Spotted Fever resulting from tick bites received over a period of two weeks while on the job had a compensable "accident," even though the cause of the claimant's death could not be attributed to one particular tick bite. *Reinoehl* was, itself, merely one in a line of cases so holding.

In *McNeil v. Panhandle Lumber Co.,* 34 Idaho 773, 203 P. 1068 (1921), this Court addressed a case strikingly similar to the one at hand. In *McNeil,* repeated heavy lifting on the job gradually caused the detachment of claimant's retina, loss of the right eye, and, in that particular case, total blindness. This Court refused to deny McNeil his right to recover for failure to fix with particularity the time when his ultimate injury occurred, stating:

> "Undoubtedly in most cases of accidental injury the claimant would be able to fix not only the day but the hour, if necessary, when the accident occurred. But in a case of this kind in which the injury may not appear for some time after it has been actually inflicted by the accident, it would be manifestly unfair and a denial of justice to refuse compensation because the claimant could not identify the very day of the accident, though he could fix the time with reasonable certainty. To so hold would be to misconstrue the main provisions of this [workmen's compensation] law, whose purpose is declared by the legislature to be to provide sure relief for injured workmen and their families and their dependents. [Citation omitted]. The workmen's compensation law, like other laws of this state, is to be liberally construed with a view to effect its object and promote justice." 34 Idaho at 786, 203 P. at 1081.

This Court again set forth the concerns of *McNeil* in *Aldrich v. Dole,* 43 Idaho 30, 249 P. 87 (1926), where the Court affirmed a judgment reversing the decision of the Industrial Accident Board which had denied an award to claimant Aldrich. Aldrich had worked driving a truck in which the gears had become worn requiring Aldrich to press a shift-lever with his right knee and causing repeated blows to the knee by the lever. Eventually, the knee was bruised to such extent that it became disabled. This Court again noted the injustice of denying compensation in such a case:

> Now if the single pressing of the knee against the lever and the single striking of the knee by the lever would result in an injury by accident, can we say that the injury actually received was not caused by accident merely because there was a continuation of the causes that brought on the injury? The statute does not restrict compensation to an injury that results from single event, and there would seem to be no sound reason for holding that an injury occasioned by a number or series of events is not within the act. 43 Idaho at 35, 249 P. at 92.

If anything, there is even less reason today to accord any deference to the notion that a claimant must specify with particularity a single event or happening which constitutes the "accident" or results in the claimed injury. This state's legislative amendment to I.C. § 72–201 (resulting in the present I.C. § 72–102(14)(b)) requires that this Court accord more, and certainly not less, consideration to claimants' attempts to reasonably locate their injuries than this Court did seventy years ago.

I would rule that on the basis of this record claimant has amply demonstrated that her back injury arose from her heavy lifting at work and that the accident has been reasonably located as to the time and place of its occurrence.

BISTLINE, J., and BENGTSON, J., pro tem, concur.