767 P.2d 1261

**Patricia Louise VERNON,**
**Claimant–Appellant,**

v.

**OMARK INDUSTRIES, Employer,**

and

**State Insurance Fund, Surety,**
**Defendant–Respondent.**

**No. 17312.**

Supreme Court of Idaho.

Jan. 16, 1989.

Church & Brown, Lewiston, for claimant-appellant. Charles A. Brown argued.

M. Karl Shurtliff, Boise, for defendant-respondent.

BAKES, Justice.

The Industrial Commission denied Vernon's claim for worker's compensation benefits, ruling that she had not proved that her injury arose out of and in the course of her employment. On appeal this Court vacated and remanded the case back to the commission, instructing it to "make more detailed factual findings and conclusions of law to support its ultimate holding." *Vernon v. Omark Industries*, 113 Idaho 358, 361, 744 P.2d 86, 89 (1987) (*Vernon I*). On remand, the commission made new findings of fact and conclusions of law and again concluded that claimant failed to sustain her burden of proving that she suffered an accident as defined in I.C. § 72–102(14)(b).[1] Claimant appeals. We affirm.

I

The new findings of fact and conclusions of law which the commission made can be summarized as follows. Claimant Vernon's application for hearing stated the date of injury as "6–13–83 to 6–23–83 during work hours." In June of 1983, claimant was 40 years old and had worked at Omark Industries (Omark) for approximately nine years. The last seven years had been spent packaging primers. She worked four 10–hour days per week, and her work included lifting trays of primers, weighing 28 to 56 pounds apiece.

Claimant testified on direct examination that she began to experience pain on June 13, 1983, while she was at work. On cross examination, however, she conceded (and the commission found) that all she remembers is that her low back began to hurt sometime around the middle of June, 1983.

Claimant continued to work through June 23, though she experienced increasing low back pain. On June 24, her day off, claimant consulted Dr. Skinner, a chiropractor whom she had previously seen for low back pain. Claimant subsequently saw Dr. Skinner eight more times, but never identified her pain as work related. Claimant also consulted Dr. Johnson, a general practitioner, on July 8, 21, and 28. During this period she did not report any work related injury to her employer. Rather, claimant told her supervisor that she was seeing Dr. Johnson for arthritis in her back.

Claimant's back pain did not improve. On July 21, 1983, she went to the office of Dr. Colburn, an orthopedic surgeon in Lewiston, Idaho. Claimant was there examined by Betty Imthurn, a nurse practitioner. According to the history recorded by Imthurn, (1) claimant complained of continuous pain in her right low back, radiating into the right thigh, calf, and occasionally into the foot; (2) sometimes she experienced sharp pain in the low back; (3) claimant first noticed her symptoms about five weeks earlier (mid-June) and they were unrelated to any particular activity or incident; and (4) claimant had experienced low back pain intermittently for the last 6 years, but denied any previous leg symptoms. Imthurn advised claimant to cease work; in compliance claimant stayed in bed most of the following week.

On July 28 claimant returned. It was then Imthurn's impression that claimant had a herniated lumbar disc. Claimant was told to check with Dr. Colburn in two weeks, but claimant desired more immediate treatment so on July 29, 1983, she saw Dr. Adams, an orthopedic surgeon in Spokane, Washington. According to Dr. Adams' history, claimant denied previously

1. "**72–102. Definitions.**—Words and terms used in the workmen's compensation law, unless the context otherwise requires, are defined in the subsections which follow.
. . . .
"(14) 'Injury' and 'accident.'
. . . .

"(b) 'Accident' means an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury."

feeling pain in her back and legs, but reported that this particular injury was work related, that it occurred on June 15, 1983, and that the pain began in her back, then extended into the right leg. A myelogram and CAT scan were performed on August 8, disclosing a herniated disc. Claimant underwent surgery on August 23, 1983, and ultimately was released to return to work again on January 23, 1984. When asked to state the cause of claimant's injury, Dr. Adams testified:

"[B]asically, it would be an overuse syndrome. Principally, it doesn't appear that there's one particular episode that caused it, at least in my history. But the type of injury is consistent with the type of work that she has done."

Claimant reported her injury to Omark on August 4, 1983. In that report claimant did not state a date of injury, but stated the date of diagnosis as June 24, 1983. It is Omark's policy to report any injury, no matter how minor, promptly after it occurs. Claimant was aware of the policy and had reported previous injuries in a prompt manner. Claimant testified, however, that she did not report this particular injury earlier because she was afraid she might be disciplined for excessive absence from work. Claimant claims she had received a previous warning for excessive absences. The commission found, however, based on the testimony of claimant's supervisor, that claimant received no warning concerning absences until after she returned to work in January of 1984.

Claimant had a prior history of back trouble. In 1978 she pinched a nerve as she was lifting her baby. She received chiropractic treatment. In 1979 claimant suffered a back injury at work when she lifted a case of literature. She was subsequently treated by a general practitioner. On a third occasion, claimant fell down some stairs and hurt her tail bone. Claimant also had a series of back treatments by Dr. Skinner between November 26 and December 15, 1982. As stated in claimant's deposition, the treatment was for back pain "close to the same area" where surgery was ultimately performed, but the pain's cause was not described in Dr. Skinner's records. Claimant also had appointments with Dr. Skinner on March 4 and May 5, 1983, but cancelled both appointments.

Based on this evidence, the commission was not persuaded that claimant injured her back at work in mid-June as claimed. Most significantly, the commission noted, claimant related no mishap or event which produced her low back pain. After reviewing the definition of "accident" contained in I.C. § 72–102(14)(b), the commission concluded that "Claimant has failed to sustain her burden of proving that she suffered an accident, that is, an unexpected, undesigned and unlooked for mishap or untoward event connected with her employment which caused her injury." Accordingly, claimant's claim was denied and her application for hearing was dismissed. Claimant appeals. We affirm the commission's decision.

II

The first issue before the Court is whether, construing the record most favorably to the party which prevailed below, here the defendants/respondents, *Johnson v. Bennett Lumber Co.*, 115 Idaho 241, 766 P.2d 711 (1988), there is any substantial competent evidence to support the commission's factual findings. Idaho Const., Art. 5, § 9; I.C. § 72–732(1); *Blackwell v. Omark Industries*, 114 Idaho 10, 752 P.2d 612 (1988). As the record here demonstrates, there is ample substantial competent evidence upon which the commission could have based its findings.

 The burden of proof in an industrial accident case is on the claimant.

"A claimant in a worker's compensation case has the burden of proving that he is entitled to benefits. *The claimant must prove not only that he was injured, but also that his injury was the result of an*

*accident arising out of and in the course of his employment. His proof must establish a probable not merely a possible connection between cause and effect to support his contention that he suffered an accident."* Neufeld v. Browning Ferris Industries, 109 Idaho 899, 902, 712 P.2d 600, 603 (1985) (emphasis added).

Further, in order to be entitled to benefits, claimant must prove that she suffered an "accident," *i.e.,* "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." I.C. § 72-102(14)(b). Here, however, claimant made no such showing. Claimant has not testified to any "unexpected, undesigned, and unlooked for mishap, or untoward event" in her work. Rather, she conceded, "All I remember is I just started hurting around the middle of the month [June, 1983]." Further, in her deposition claimant testified as follows:

"Q. [By respondent's attorney] There's nothing else that you could add from your point of view that would further demonstrate that this incident did occur in the work place, that it was ...

"A. Other than the heavy lifting, it's the continual heavy lifting.

"Q. Do you believe that's what caused it yourself?

"A. Yes.

"Q. That it was just—it wasn't an incident, it was just a continuing.

"A. Continuing lifting.

"Q. Continuing lifting. You believe that that's what caused it?

"A. I believe that, yes.

"Q. Rather than just one sharp turn.

"A. Uh—huh."[2]

Claimant attempted to establish that she suffered an "accident" by introducing the testimony of Dr. Adams. However, Dr. Adams' testimony did not establish an "unlooked for mishap, or untoward event." Instead, he stated, "Principally, it doesn't appear that there's one particular episode that caused it, at least in my history."

Other evidence in the record also contradicts, rather than supports, claimant's assertion that she suffered a compensable "accident." First, when claimant saw chiropractor Skinner, she never identified her pain as work related. Second, during the period she was seeing Dr. Johnson, claimant did not report any work related injury to her employer—indicating instead that she was seeing Dr. Johnson for arthritis in her back. Third, according to the history recorded by Nurse Imthurn in Dr. Colburn's office, the symptoms claimant first noticed in mid-June were unrelated to any particular activity or incident; further, for the last six years claimant had experienced intermittent low back pain. Fourth, in her injury report to Omark, claimant did not state a date of injury and, in fact, did not make her report until six weeks after the alleged "accident," even though claimant was aware of Omark's policy requiring prompt reporting of injuries. And fifth, the record contains evidence that claimant's problem may have been ongoing, not the result of an "unlooked for mishap, or untoward event." On various prior occasions claimant had suffered back injuries, and between November 26 and December 15, 1982, chiropractor Skinner was treating claimant for back pain "close to the same area" where surgery was ultimately performed. Further appointments with Dr. Skinner were scheduled for March 4, and May 5, 1983, but were later cancelled by claimant.

Viewing the record in a light most favorable to the respondents prevailing below,

---

**2.** This testimony given by claimant at her deposition was later reaffirmed by her at her hearing before the Industrial Commission. After respondent's counsel read the colloquy back to claimant, claimant testified:

"Q. If I were to ask you those same questions, would your answers be the same today?
"A. Yes."

there is more than ample evidence to support the Industrial Commission's conclusion that "Claimant has failed to sustain her burden of proving that she suffered an accident, that is, an unexpected, undesigned and unlooked for mishap or untoward event connected with her employment which caused her injury."

The commission's decision is supported by our decision in *Hazen v. General Store,* 111 Idaho 972, 729 P.2d 1035 (1986). In *Hazen* this Court affirmed the Industrial Commission's denial of compensation because claimant Hazen's injury was not the result of an "accident." Hazen worked in a convenience store, and her regular duties included lifting cases of beer and pop. Her testimony indicated that in mid-May of 1983 she began to notice that she was tired, ached all over, and had a sharp pain in her right leg. The pain continued for several weeks and during that time she had discussions with her supervisor about it, although she never attributed the pain to her work or any accident occurring during her work. Hazen ultimately saw a chiropractor. The chiropractor's health insurance claim form stated that Hazen's problems were not work related. The chiropractor then referred Hazen to a neurologist who performed a CAT scan and myelogram. Hazen was advised by the neurologist that she had a herniated disc. Up to that time, claimant Hazen had never asserted that her medical problem was work related, or that it resulted from an accident which she had incurred during her employment. In her amended application for hearing, though, Hazen alleged that her accident and injury occurred between May 13, and May 23, 1983, claiming it resulted from lifting heavy crates and cases of beer and pop. At the hearing, Dr. Bowman, an orthopedic surgeon, testified that "there does not appear to be any specific incident which caused this lady to have a herniated disc which is documented by the record." 111 Idaho at 973, 729 P.2d at 1036.

The Industrial Commission accepted the testimony of Dr. Bowman and found that claimant's herniated disc was not the result of an accident, but had come on gradually over a long period of time. Dr. Bowman's testimony was corroborated in part by claimant's own testimony and the record in that case, which suggested that throughout the period from May of 1983, until after her surgery, claimant Hazen at no time attributed her problem to her employment, or an accident which occurred during her employment. Upon such a record, this Court in *Hazen* concluded:

> "Accordingly, construing the record most favorably to the respondent in this matter, as we must, there is more than sufficient substantial, competent evidence to sustain the finding of the Industrial Commission 'that the claimant's herniated disc was not the result of an accident....'" 111 Idaho at 974, 729 P.2d at 1038.

The *Hazen* decision is controlling, and supports the commission's decision.

### III

 The only other issue which we must consider is whether the following statement, found in the specially concurring opinion of Justice Huntley in *Vernon I,* and concurred in by Bistline, J., and Bengtson, J. pro tem., was a ruling as a matter of law that the claimant should prevail on remand to the commission:

> "I would rule that on the basis of this record claimant has amply demonstrated that her back injury arose from her heavy lifting at work and that the accident has been reasonably located as to the time and place of its occurrence." 113 Idaho at 363, 744 P.2d at 91.

We hold that this statement was not a ruling that the claimant should prevail as a matter of law on remand to the commission.

The majority opinion in *Vernon I,* written by Chief Justice Donaldson and concurred in by three other justices, and in which the *pro tem.* justice concurred in the result, "vacate[d] the commission's decision

and remand[ed] back to the commission with the instruction that it make more detailed factual findings and conclusions of law to support its ultimate holding." *Id.* at 360–361, 744 P.2d at 88–89. Accordingly, the law of the case was not that claimant should prevail on remand; rather, it was that the case was remanded to the commission to make more detailed findings and conclusions.

The specially concurring opinion of Justice Huntley is not in conflict. Justice Huntley states, "I agree that this case should be remanded to the Industrial Commission for more appropriate and specific findings of fact and conclusions of law." *Id.* at 362, 744 P.2d at 90. Hence, the decision of this Court in *Vernon I,* as reflected in both the majority opinion and in Justice Huntley's special concurrence, was only that the Industrial Commission should reconsider the case and make more detailed findings of fact and conclusions of law. In *Vernon I* we did not reverse the commission and remand with directions "for the entry of an appropriate award to claimant," as we did in *Wynn v. J.R. Simplot Co.,* 105 Idaho 102, 105, 666 P.2d 629, 632 (1983). That would have been the appropriate form of order had we concluded that claimant Vernon was entitled to an award as a matter of law based upon the evidence in the record.

In sum, we hold that the record contains substantial competent evidence to sustain the commission's findings, conclusions and order in this case. We also hold that the Industrial Commission correctly carried out our directive on remand from *Vernon I.* The decision of the Industrial Commission is affirmed. Costs to respondents. No attorney fees on appeal.

SHEPARD, C.J., and JOHNSON, J., concur.

BISTLINE, Justice, dissenting.

The very first page in Vernon's appellate brief needs to be reproduced, as it has apparently escaped the attention of Justice Bakes in the drafting of his proposed majority opinion:

This is the second appeal to be heard by this Court in this same matter. In the first appeal, Claimant appealed from an Industrial Commission order which held that there was not substantial and competent evidence to support the Claimant's position that the injury she suffered was work related.

This Court held for the Claimant and found in a 5–0 decision that concluded:

Here the Commission simply recited the conflicting evidence presented without resolving the factual conflicts. In short, the Commission's factual findings and conclusions of law are incomplete and need to be expanded before we can properly exercise our appellate review function. Accordingly, we vacate the Commission's decision and remand back to the Commission with the instruction that it make more detailed factual findings and conclusions of law to support its ultimate holding.

1987 Opinion No. 88, p. 6.

But, in addition to the above, three of the Justices agreed that:

If anything, there is even less reason today to accord any deference to the notion that a Claimant must specify with particularity a single event or happening which constitutes the 'accident' or results in the claimed injury. This state's legislative amendment to Idaho Section 72–201 (resulting in the present Idaho Code 72–102) (14)(b) requires that this Court accord more, and certainly not less, consideration to Claimant's attempts to reasonably locate their injuries than this Court did seventy years ago.

*I would rule that on the basis of this record Claimant has amply demonstrated that her back injury arose from her heavy lifting at work and that the accident has been reasonably located as to the time and place of its occurrence.*

Justice Huntley's Opinion: 1987 Opinion No. 88, p. 12. (emphasis added)

In essence, despite these findings, the Industrial Commission has chosen to disagree with this Court as to the definition of the 'accident' as that term has been defined by statute and also as that term has been defined by case law issued by the Idaho Supreme Court.

Appellant's Brief, p. 1–2 (emphasis in original). Page 10 of that brief provides this:

The revised findings of fact as found by the Industrial Commission do much to bolster Claimant's argument herein. This case has now narrowed down to the single issue of an 'accident.' The Industrial Commission specifically found that:

Based upon the evidence presented, the Commission is not persuaded that the Claimant injured her back in mid-June 1983. Most significantly, *the Claimant relates no specific mishap or event* which produced her low back pain.

Again, the Industrial Commission apparently wants a falling, or a tumbling, or a tripping to take place before it is going to recognize an 'accident.' And once the Claimant falls or trips, he or she must yell out in pain in order to immediately notify the employer of this mishap.

The Industrial Commission is unwilling to recognize that low-back injury at work could easily occur and should be recognized as such when a woman who is 43 years of age, weighs approximately 132 pounds, and lifts up to 9 tons of primers a day. In lifting up to 9 tons or primers a day, the Claimant was stooping, bending, twisting, and manually handling each tray of primers as she removed them from their storage binds, lifted, twisted, and placed them upside down on the work bench in front of her.

The evidence at trial was clear and unrefuted that the Claimant was involved in no other extracurricular activity that could have caused the damage to her back and that she felt the initial pain while she was at work performing her duties, and that pain worsened as she still attempted her work duties.

The Idaho Supreme Court has stated previously that:

As this Court has repeatedly stated, 'If a Claimant be engaged in his ordinary usual work and the strain of such labor becomes sufficient to overcome the resistance of Claimant's body and causes an injury, that injury is compensable.'

*Wynn v. J.R. Simplot Co.*, 105 Idaho 102 at 104, 666 P.2d 629 [at 631] (1983).

The facts of the *Wynn* case are blatantly similar to those of the present case. In both cases, the workers performed strenuous labor. In both cases, the Claimants suffered a back injury which required surgery. In *Wynn* a ruptured disk, and in the present case, a herniated disk. Both Claimants presented uncontroverted testimony from their attending physicians that the injuries were work related. In *Wynn* the Court overruled the Industrial Commission decision which denied benefits.

Appellant's Brief, p. 10–11 (emphasis supplied).[3]

Mr. Brown's opening remarks at oral argument informed us that he thought he had won when he read the 1987 opinions. When we decided *Vernon v. Omark I*, it was believed that his client *should have won* but didn't, based on being unaware that Judge Bengston had joined Justice Huntley's opinion. Later, when this case resurfaced, on reading our three reported opinions in 113 Idaho, it was inescapable that she *had* won.

As the excerpt from the brief illustrates, Justice Donaldson had three concurrences

---

**3.** Omark's brief sloughed off this issue, stating only that "The Appellant argues that the Commission failed to adhere to the directive of the Supreme Court as set out in the special concurrence of Justice Huntley." It goes without saying that capable counsel representing Omark and the State Insurance Fund is well aware that the special concurrence was that of Justice Huntley, *joined by two other members of the Court.* In turn, Justice Bakes sloughed off the issue by ignoring it.

plus one vote concurring in the result, but there was also the special concurrence by Justice Huntley, with Justice Bistline and Justice Pro Tem Bengston concurring. Justice Donaldson's opinion vacated the Commission's decision and remanded the cause to the Commission with the instruction that it make more detailed factual findings and conclusions of law *to support its ultimate holding,* which was to deny any benefits. Apparently, in retrospect, that italicized phrase was not a good choice of words, as it certainly was capable of being read as stating that the ultimate holding was not wrong but the findings and conclusions as written insufficiently supported it. The Commission very well could have so concluded. At the same time it also may not have realized the judicial effect of there being *two* opinions which commanded the votes of a majority of the Court.

When Justice Donaldson submitted his opinion which reversed the denial of benefits, the initial concurrences indicated approval of reversing. But there was no intention that new findings and conclusions be drawn solely as to support a new decision *denying* benefits. The ultimate conclusion would depend on the findings and conclusions to which the Commission arrived. That, of course, concerned *only* the Donaldson proffered opinion. Thereafter, in the manner that such things take place, Justice Huntley and Justice Bistline also wrote to express somewhat differing views, or in addition to the views of Justice Donaldson.

My special concurrence was directed at amplifying on the Donaldson comments as an intended aid to the Commission in redetermining whether the claimant "sustained her burden of proving her injury resulted from an accident," per Donaldson, J., 113 Idaho at 360, 744 P.2d at 88. My opinion was based on the precedent and the teachings of the *Wynn* case:

> Most working people can be expected to want to remain on the job, not because they enjoy the heavy lifting and concomitant back pain, but because the pay check is a necessity. They are not kennel hounds, but motivated workers.

Repetitive trauma sets the stage for an injury to occur, as per *Wynn,* and, in the absence of any evidence, any other activity to which the surety or the employer can point, and which is attributable as being the culprit—it is only reasonable and fair to conclude that the ultimate injury was job-related. *The legislature has only required that it be reasonably located as to time and place.* It would be improper for the Commission or this Court to require more of a heavy-lifting claimant than a best recollection [as to when the incident likely occurred].

*Vernon v. Omark Industries,* 113 Idaho 358, 361–362, 744 P.2d 86, 89 (1987). My separate opinion was in the mill at the same time that Justice Huntley was independently writing his separate opinion, as witnessed by the conclusion in mine: "In the final analysis in these cases, the answer is to be found, as Justice Huntley suggests, *by eliminating other possible causes for which there is no supporting evidence.*" Justice Huntley, after reading my opinion added footnote 2 to his opinion.

His opinion provided guidance to the Commission in further proceedings. When it garnered two votes in addition to his own vote, it became a directive. He wrote:

> However, I would also like to highlight what I believe to be the major problem source in cases of this kind. As stated in the majority opinion, I.C. § 72–102(14)(b) requires that before a claimant recover for an accident or injury occurring in the work place or on the job, such accident or injury must be 'reasonably located as to time when and place where it occurred.' Simply put, that statute does *not* require a plaintiff to pinpoint an exact time when the injury occurred, but only a reasonable estimate of such. Indeed, in unique cases such as this, where a claimant has, in all likelihood, suffered an injury as a result of cumulative and repeated stress or trauma, it would simply be unfair and unreasonable to require the impossible of

a claimant who is not able to pinpoint one exact date upon which such an injury or accident occurred.

Prior to the 1971 comprehensive amendment of the workmen's compensation law, I.C. § 72–201 (the predecessor of the present I.C. § 72–102(14)(b)) read: 'Accident' as used in this law, means an unexpected, undesigned, and unlooked for mishap, or untoward event, *happening suddenly* and connected with the industry in which it occurs and which can be *definitely located* as to time when and place where it occurred, causing an injury as defined in this law." (Emphasis supplied). By deleting the words 'happening suddenly,' and supplanting the words 'definitely located' by the words 'reasonably located,' it is evident that this state's legislature meant to require of the claimant only such proof as to time when and place where any injury occurred as was reasonably possible.

Also of some importance is the fact that this Court has long recognized that justice and fairness require that, in cumulative injury cases, the claimant is not required to pinpoint an exact date of an injury or accident.

In *Reinoehl v. Hamacher Pole and Lumber Co.*, 51 Idaho 359, 6 P.2d 860 (1931), this Court ruled that a claimant who had died of Rocky Mountain Spotted Fever resulting from tick bites received over a period of two weeks while on the job had a compensable 'accident,' even though the cause of the claimant's death could not be attributed to one particular tick bite. *Reinoehl* was, itself, merely one in a line of cases so holding.

In *McNeil v. Panhandle Lumber Co.*, 34 Idaho 773, 203 P. 1068 (1921), this Court addressed a case strikingly similar to the one at hand. In *McNeil*, repeated heavy lifting on the job gradually caused the detachment of claimant's retina, loss of the right eye, and, in that particular case, total blindness. This Court refused to deny McNeil his right to recover for failure to fix with particularity the time when his ultimate injury occurred, stating:

Undoubtedly in most cases of accidental injury the claimant would be able to fix not only the day but the hour, if necessary, when the accident occurred. But *in a case of this kind in which the injury may not appear for some time after* it has been actually inflicted by the accident, *it would be manifestly unfair and a denial of justice to refuse compensation because the claimant could not identify the very day of the accident,* though he could fix the time with reasonable certainty. To so hold would be to misconstrue the main provisions of this (workmen's compensation) law, whose purpose is declared by the legislature to be to provide sure relief for injured workmen and their families and their dependents. (Citation omitted). The workmen's compensation law, like other laws of this state, is to be liberally construed with a view to effect its object and promote justice. 34 Idaho at 786, 203 P. at 1081.

\* \* \* \* \* \*

I WOULD RULE THAT ON THE BASIS OF THIS RECORD CLAIMANT HAS AMPLY DEMONSTRATED THAT HER BACK INJURY AROSE FROM HER HEAVY LIFTING AT WORK AND THAT THE ACCIDENT HAS BEEN REASONABLY LOCATED AS TO THE TIME AND PLACE OF ITS OCCURRENCE.

*Vernon v. Omark, supra,* 113 Idaho at 362–363, 744 P.2d at 90–91, per Huntley, J. (emphasis added).

Justice Huntley was advised that I concurred in his opinion, *including that which he would hold.*[4] Unbeknownst to me until much later in preparing for this second appeal was that Justice Pro Tem Bengston

---

**4.** "I would hold" is appropriate language to be used where at the time of writing the author does not know that he will gain two concurrences.

had also joined the Huntley opinion. One plus one plus one equals three. Three of us therefore "would hold" and thus did hold "that claimant had amply demonstrated that her back injury arose from her heavy lifting at work and that the accident has been reasonably located as to the time and place of occurrence."

Any time that there are three votes for a given holding in a given opinion that becomes on a five-man court, *the law of the case.*

> The rule is well established and long adhered to in this state that where, upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal.... *Suitts v. First Security Bank of Idaho,* 110 Idaho 15, 713 P.2d 1374 (1985) (*quoting from Carlson v. Northern Pacific Rail Co.,* 86 Mont. 78, 281 P. 913, 914 (Mont.1929).

*Matter of Barker (Barker v. Fischbach & Moore, Inc.),* 110 Idaho 871, 872, 719 P.2d 1131, 1132 (1986).

*Barker,* coincidentally, not only is a landmark case insofar as the doctrine of law of the case is concerned, but it also was a workers' compensation case and a case which came before the Supreme Court on appeal on two occasions.

The first appeal, *Barker I,* is found at 105 Idaho 108, 666 P.2d 635 (1983). (Another coincidence is that it is located side-by-side with *Wynn v. J.R. Simplot Co.,* 105 Idaho 102, 666 P.2d 629 (1983).) Just as here Justice Donaldson authored *Vernon I,* he also authored *Barker I,* which would have been unanimous except for the dissent of Justice Bakes. The holding in *Barker I* was "that as a matter of law the Commission erred in the way it applied *Spanbauer*[5] to the facts of this case." In reversing and remanding the Court in-

structed the "Commission to determine if other evidence, besides the payment of travel expenses, exists to support a finding that [claimant] was within the course of employment at the time of the accident." *Barker I,* 105 Idaho at 111, 666 P.2d at 638. In *Barker II,* the second appeal, after stating the doctrine of the law of the case, the Court's per curiam opinion, set out hereinabove, went on to add in conclusion:

> As we noted in *Suitts, the doctrine of law of the case has long been the rule in this jurisdiction.* See Palmer v. Dermitt, 102 Idaho 591, 595, 635 P.2d 955, 959 (1981); Creem v. Northwestern Mut. Fire Ass'n of Seattle, Wash., 58 Idaho 349, 352, 74 P.2d 702, 703 (1937); Unfried v. Libert, 23 Idaho 603, 606, 131 P. 660, 661 (1913); Hall v. Blackman, 9 Idaho 555, 75 P. 608 (1904). In fact, this Curt has often compared the doctrine of law of the case with the principle of *res judicata,* indicating that an appellate court is bound by the law of the case. See Idaho Dept. of Law Enforcement v. One 1955 Willys Jeep, 100 Idaho 150, 157, 595 P.2d 299, 306 (1979) (Bistline, J., dissenting); Creem v. Northwestern Mut. Fire Ass'n of Seattle, Wash., 58 Idaho 349, 358, 74 P.2d 702, 705 (1937) (Ailshie, J., dissenting in part); Hall v. Blackman, 9 Idaho 555, 559–560, 75 P. 608, 609 (1904).
>
> The Industrial Commission correctly applied the law announced by this Court in *Barker I* to the facts of this case. Accordingly, the order of the Industrial Commission is affirmed; costs to respondent.

*Barker II,* 110 Idaho 871, 872–73, 719 P.2d 1131, 1132 (1986) (emphasis supplied). If memory serves me correctly, the Court's per curiam opinion in *Barker II* was authored by Justice Bakes.

That which Justice Donaldson first wrote, *i.e.,* the cause remanded for redrawn findings and conclusions, is not inconsistent with what the other majority opinion of Justice Huntley holds. Three of

---

5. *Spanbauer v. Peter Kiewit & Sons Co.,* 93 Idaho 509, 465 P.2d 633 (1970).

us decided the issue which Justice Donaldson's opinion had earlier stated should be reconsidered by the Commission. Nothing was left for the Commission to attend to other than the preparation of a new set of findings and conclusions which would sustain this Court's ultimate conclusion,[6] purely a ministerial act.

At this point we should again vacate the decision of the Industrial Commission. The directions on remand should be that the Commission make the necessary determinations as to the extent of claimant's permanent impairment and then as to her permanent disability. Thereafter a proper monetary award should be computed and ordered.

HUNTLEY, J., concurs.

HUNTLEY, Justice, dissenting.

I fully concur in the dissent of Justice Bistline and would make three additional comments:

(1) The Bar and the Industrial Commission should note that the majority opinion of today does *not* at any point reverse, repeal, revise or modify the law of the three-justice majority of *Vernon I* on the issue of how the Commission is to construe the statutory requirement that the accident be reasonably located as to time and place.

(2) Today's majority opinion stands for only one proposition—Mrs. Vernon is not to be compensated because three justices and three commissioners misread what the words of Justice Donaldson's remand meant.

When I voted with him in his use of the following words, "... make more detailed factual findings and conclusions of law to support its *ultimate holding*," such was in the context, *not* of reentering the same ultimate holding, but rather we had pointed out that the Commissioner's "then holding" was not supported by its findings from the record. At no point did Justice Donaldson dictate what the "ultimate holding" should be and I must respectfully say that it is just plain wrong for this Court to approve the Commission's misunderstanding and misimplementation of its duty.

Totally ignored by Justice Bakes from Justice Donaldson's *Vernon I* is the following:

> In the instant case, the commission did not explain the rule of law under which they were operating. They merely stated that the claimant did not meet her burden of proof.
>
> We cannot ascertain whether the commission simply did not believe the testimony of the claimant's doctors or her own testimony, or placed a greater weight on the conflicting evidence, or believed the claimant's testimony, but applied a rule of law to reach its determination. It is not our function to guess the reasoning of the commission. We cannot determine that the commission acted properly, or improperly, in reaching its conclusion. Thus, we must vacate its decision and remand to clarify its rationale. With our restrained review of the commission's factual findings, it becomes essential that the conclusions of law not be shrouded in ambiguity.

(3) Thank you, Mrs. Vernon, for having provided an opportunity for clarification of the law via *Vernon I*—my apologies for the circumstances which have followed to deprive you of the compensation which you earned by your labor.

BISTLINE, Justice, concurring in the opinion of HUNTLEY, Justice.

It has become apparent that not even one of the three members constituting the ma-

---

6. Justice Donaldson died in office shortly after our opinions issued. As his office was in charge of the release of opinions in this case, it is not known whether he had learned of Justice Pro Tem Bengston's concurrence in Justice Huntley's opinion. As stated, that news was not conveyed to me. Had it been during Justice Donaldson's lifetime, I would have suggested that he rewrite his opinion so as to avoid leaving any possibility of an ambiguity in further proceedings. Accepting things as they are, there is not any conflict in our two majority opinions. The second in point of time, Justice Huntley's, modified and superseded the first in just the one particular.

jority commanded by Justice Bakes' opinion has any inclination to attempt dispelling the views which Justice Huntley has espoused in his dissenting opinion, and likewise with the views in mine.

This presents, then, a sad commentary on the supposed science of jurisprudence in Idaho. As I have pointed out on earlier occasions, when there is a dissenting opinion in other jurisdictions, including the Supreme Court of the United States, those in the majority—being in the position of making new law, or destroying old law—ordinarily are very conscientious in explaining away what is by the majority perceived to be the fallacy of the dissenting views.

Here, however, those in the majority make not the slightest response. Instead they have chosen to stonewall the dissenting opinions. This is not acceptable. The trial bar and the litigants are entitled to know by what logic those in the majority can undo the *law of the case* which was made in *Vernon I.* Where nothing has been forthcoming it becomes shamefully obvious that no one in today's majority possesses the fortitude to even attempt an explanation.

What the trial bar and the citizenry of Idaho see today is a clear example of the damage which can be wrought in the judicial system whenever three Supreme Court Justices indulge in a power struggle born of the proposition that three beats two. This case, though important to Mrs. Vernon, was not that important that three members of the Court should find it necessary to shatter the underpinnings of a doctrine of law that has not heretofore been questioned in the slightest. For just one example of this Court in action in better days, *see State v. Monroe,* 101 Idaho 251, 611 P.2d 1036 (1980) where the lead and larger portion of the majority opinion was written by one justice, with another justice writing on but one issue in the case. We never doubted that there were in *Monroe* two majority opinions. The only distinction between *Monroe* and *Vernon II* is that, because of clerical inadvertence, we were not made aware when the opinions issued that Justice Pro Tem Bengston had joined Justice Huntley's opinion. But he had, and the latter opinion was a second majority opinion. The distinction is one without a difference. As a matter of fact probably a goodly share of this Court's opinion come about in that manner. Ordinarily, where there is another opinion which also commands a majority, it is usually tendered to the author of the lead opinion (ordinarily determined by the luck of the draw) who willingly incorporates it into what he has written.