(No. 5971. April 24, 1933.)

DELLA F. ROE, Respondent, v. BOISE GROCERY COMPANY, Employer, and STATE INSURANCE FUND, Surety, Appellants.

[21 Pac. (2d) 910.]

J. J. McCue and Charles F. Reddoch, for Appellants.

Paris Martin, for Respondent.

HOLDEN, J.—Charles A. Roe was a traveling salesman, employed by appellant Boise Grocery Company, being the husband of claimant, Della F. Roe, and lived at Boise, Idaho. He regularly traveled by automobile from Boise to Ontario, Vale, Drewsey, Beulah and intermediate points to Burns, Oregon, and from Boise to Mountain Home, Bruneau, Murphy and Jordan Valley. One week he covered what we will term the "Burns territory," and the next week the "Jordan Valley territory." He traveled both days and nights, seeing customers at hotels, stores and wherever it was most convenient to them, during the day and at nights. In the springtime of each year both the Burns territory and the Mountain Home territory were infested with wood-ticks infected with the virus which causes Rocky Mountain spotted fever. March 21, 1932, Roe left Boise for Ontario, Oregon, for the purpose of covering the Burns territory, and in the afternoon of March 22, 1932, while driving from Beulah to the town of Crane, Oregon, the Roe car got stuck in the mud. Another traveling salesman driving just ahead of Roe stopped and helped him. These salesmen spent the best part of the afternoon and until about 11 o'clock that night gathering rocks out in the sage-brush on either side of the road, and placing them under the wheels of the Roe car. About 11 o'clock they got into their respective cars and then slept the rest of the night. The next morning about 11 o'clock they got the Roe car out of the mud-hole, and Roe then continued on his way to Crane, and from Crane drove on to Burns. At Burns Roe examined himself to see if he had any wood-ticks, but did not find any. From Burns he visited the other towns in that territory returning

home Saturday evening, March 26, 1932. About 10 o'clock the next (Sunday) morning, a wood-tick was found imbedded in his right leg, and at the point where the tick was imbedded in the leg there was inflammation and an appearance of infection. After the tick was removed Roe went to church, and in the afternoon took his daughter to Mountain Home, but did not get out of his car.

Monday morning, March 28, 1932, Roe left Boise, on a trip into the Jordan Valley territory, returned to Boise about the middle of the week, stayed overnight, and then drove to the towns of Bruneau, Murphy and Oreana. While in Bruneau he visited a daughter either on Wednesday, March 30th, or Thursday, March 31, 1932, and returned home in the evening, at which time it was found Roe had a "bite" over his left shoulder-blade. The next morning Roe left home on another trip returning to Boise Saturday night, April 2, 1932. Monday morning, April 4, 1932, Roe left home on another regular trip into the Burns territory, took sick at Ontario, Oregon, returned to Boise and entered a hospital April 5, 1932, at which time it was found he was suffering with Rocky Mountain spotted fever, and on the 16th of that month he died.

It appears from the record that the period of time usually elapsing between the time an infected wood-tick bites a patient and the time the fever manifests itself is from twenty-four hours to ten days, that period being known as the period of incubation.

This appeal is from a decree of the district court affirming an award of the Industrial Accident Board in favor of claimant, Della F. Roe, and against the Boise Grocery Company, employer, and the State Insurance Fund, surety.

We will review the errors specified by appellants in the order in which they are assigned.

That (a) Finding No. III, affirmed by the court, wherein the board found "that being bitten by, and infected by, ticks infected with said virus in all of the above-described territory, is a risk incident to all who live or travel in said territory in the spring time," is inconsistent with

Finding No. VIII, wherein the board found, among other things, ''that the greater probability is that the infected tick, from the bite of which the Rocky Mountain Spotted fever, of which he (deceased) died, developed, came in contact with his person or clothing and bit him during the time he was actually engaged in the performance of his work for his employer,'' and that the deceased ''received a personal injury by accident arising out of and in the course of his employment with defendant Boise Grocery Company'' in that Finding No. III holds and determines that the risk of being bitten by infected ticks in the territory in which deceased traveled was a risk common to the public at large; that (b) there is no finding or evidence showing that the deceased by reason of his employment was subjected to any greater or different hazard than that obtaining to the general public, for which reason no liability attached to the decedent's employer or its surety.

The evidence is uncontradicted and the board found that the deceased was a salesman; that he was employed by appellant Boise Grocery Company; that he regularly traveled by automobile over certain public highways traversing the territory allotted to him and that wood-ticks were found in the spring of the year in some sections of the territory covered by the deceased. The duties of the deceased required him to make frequent regular trips over the highways, stop at the hotels and visit his customers both to sell and collect; thus, the highways he traveled, the hotels he stopped at and the stores he visited became and were his workshop; they were the places where he constantly spent his time and worked for his employer. That cannot be said of any member of the public, not performing similar duties nor similarly employed. Consequently, the deceased was exposed to the danger of being bitten by an infected wood-tick in a greater degree than those who lived in the wood-tick territory and traveled over the highways traversing it. We think that the rule applied to the servant who, in the course of the master's business, passes along a public street, and sustains an accident by reason of the risks incidental to the

streets, should also be applied to a salesman traveling by automobile over the public highways, who sustains an accident by reason of the risks incidental to the highways. This court held in *Zeier v. Boise Transfer Co.*, 43 Ida. 549, 254 Pac. 209, that "where employment requires employee to be on street, he is subjected to different risk than ordinary traveler"; in other words, it is held that such an employee is subject, not only to different, but also to greater risks than an ordinary traveler. We do not find any inconsistency in the findings covering the matters set forth in the assignment, and believe they are amply sufficient.

While assignments numbered two, three and four are differently phrased, in substance it is complained: That (a) that part of Finding No. IX reading "that as a result of the personal injury received by accident as above stated" (referring to Finding No. VIII) is not sustained by the evidence, and is contrary to law, in that the evidence fails to show when or where the deceased was bitten by ticks and that it is not shown the deceased received a personal injury by accident arising out of and in the course of his employment; that (b) Finding No. VIII is inconsistent with and contrary to that portion of Finding No. VI reading "that the Rocky Mountain Spotted fever, of which the said Charles A. Roe died, was the result of either the bite of the tick which was on his right leg on Sunday morning, March 27th, or the tick bite which he had on him on Thursday evening, March 31, 1932," in that Finding No. VIII finds that the deceased was injured by accident, arising out of and in the course of his employment, on or about March 26, 1932, when it is claimed evidence shows that the deceased examined himself on March 24th and found no ticks on his person, and again on Sunday morning, March 27, 1932, finding only the tick on his leg, which was removed; that (c) deceased traveled on missions personal to himself and also for his employer between the time of finding the first tick and that of the second tick on the evening of March 31, 1932; that (d) the bites of both ticks were well within the period of

incubation and, therefore, there was no way of determining which of said tick bites caused the injury and sickness from which the deceased died; that (e) the findings complained of are based upon surmise, conjecture, speculation and mere possibilities; that (f) an award of compensation cannot rest upon speculation, surmise or conjecture, but must be based on facts, or inferences deducible therefrom.

It appears from the record that the deceased returned home from a regular business trip into a wood-tick infested section of Oregon on March 26, 1932, found a wood-tick on his leg the next morning, which was removed, and that later, the same morning, he went to church; that he took his daughter to Mountain Home in the afternoon of that day, and that while in the town of Bruneau, on either Wednesday, the thirtieth day of March, or Thursday, the thirty-first day of March, 1932, while on another regular business trip, he visited his daughter teaching school in that town, and on his return home it was found the deceased had a bite on his shoulder-blade.

That the deceased was bitten on the leg by a wood-tick there is no doubt whatever, because a wood-tick was found imbedded in the flesh, and further, at that point there was inflammation and an appearance of infection. On the other hand, at the point where he had been bitten on the shoulder-blade, no wood-tick was found, and there was no inflammation and no appearance of infection, and it may be added that there is no proof in the record that a wood-tick bite, in and of itself, has any characteristics which make it possible to identify it as such; nevertheless, it was assumed that the bite on the shoulder-blade was that of a wood-tick.

It is earnestly urged and ably contended that it is impossible to determine which one of the two bites, both having occurred within the usual period of incubation, caused the Rocky Mountain spotted fever, and also that it is impossible to determine whether the deceased was bitten on a business trip or on a personal trip, and that the award of compensation is based on speculation and conjecture, rather than upon facts, or inferences deducible from facts.

■ This court held in the well-considered case of *Newman v. Great Shoshone & Twin Falls Water Power Co.*, 28 Ida. 764, 156 Pac. 111, that "in a civil case it is not necessary that the facts upon which the verdict is based be established beyond a reasonable doubt. It is the duty of the jury to decide according to the preponderance of the evidence and the reasonable probability of truth." And in the case of *Adams v. Bunker Hill etc. Min. Co.* (on rehearing), 12 Ida. 637, 89 Pac. 624, 628, 11 L. R. A., N. S., 844, this court said: "There are very few things in human affairs, and especially in litigation involving damages, that can be established to such an absolute certainty as to exclude the *possibility*, or even some *probability*, that another cause or reason may have been the true cause or reason for the damage rather than the one alleged by the plaintiff. But such *possibility*, or even *probability*, is not to be allowed to defeat the right of recovery where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause."

■ And it is held in *Lillstrom v. Northern Pac. R. Co.*, 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587, that "in civil actions it is sufficient if the evidence, on the whole, agrees with and supports the hypothesis which it is adduced to prove, and it is the duty of the jury to decide according to the reasonable probability of the truth."

■ And in *McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068, this court held: (Syllabus 5) "In case of claims under the workmen's compensation law, if the accident is one whose happening cannot be fixed as of a specific date, it is sufficient to establish such time with reasonable probability."

■ While it is true that the deceased drove to Mountain Home, Idaho, with his daughter, and that while on a business trip over at Bruneau he visited his daughter, it is not disputed that he made frequent, regular trips over the highways serving a wood-tick infested section of Oregon. The

proof, then, on the one hand, shows that the deceased, in line of duty, was frequently and regularly exposed to being bitten by an infected wood-tick, and on the other hand, that he was exposed to that danger for a brief time, but once on the highway, when he drove from Boise to Mountain Home with his daughter, and back home again, and again at another time while going to and returning from a visit to his daughter, while he was at Bruneau on a regular business trip. Not having gotten out of his car on the trip to to Mountain Home, it is, at the most, a mere possibility that he was bitten on that trip, and it is extremely unlikely that he was bitten while going to and returning from a visit to his daughter while at the town of Bruneau, and the wood-tick imbedded in his right leg was found before he went to church at Boise. So that the weight of the evidence and the reasonable probability is, that the deceased was bitten by a wood-tick while on a regular trip into wood-tick infested territory.

Under the rule announced in *McNeil v. Panhandle Lumber Co.*, *supra*, we think the date of the accident is shown with sufficient certainty to have occurred at the time fixed by the board. And while there is some inconsistency in the particular findings complained of, still and nevertheless the findings of the board, taken and considered as a whole, are sufficient to support the award and judgment.

Applying to the facts in the instant case, the rule announced by this court in *Adams v. Bunker Hill etc. Min. Co.*, *supra*, affirmed in *Newman v. Great Shoshone & Twin Falls Water Power Co.*, *supra*, to the effect that it is not necessary to exclude the *possibility*, or even some *probability*, that another cause or reason may have been the true cause or reason for the damage, rather than the one alleged by a claimant, we conclude that the judgment ought to be affirmed, and it is so ordered, with costs to respondent.

Givens, Morgan and Wernette, JJ., and Sutphen, D. J., concur.

Budge, C. J., did not sit.