816 P.2d 992

Catherine PEREZ, Claimant–Appellant,

v.

J.R. SIMPLOT COMPANY, Employer, Defendant–Respondent.

No. 17752.

Supreme Court of Idaho, Boise, January 1991 Term.

Sept. 9, 1991.

Goicoechea Law Offices, Nampa, for appellant. Richard S. Owen argued.

Hawley, Troxell, Ennis, & Hawley, Boise, for respondent. Joseph D. McCollum Jr. argued.

BISTLINE, Justice.

An Industrial Commission referee, Cheri Bush, presided at the hearing in this case on April 22, 1988, and authored proposed Findings of Fact, Conclusions of Law, and Order, which the Commissioners approved and adopted by affixing their signatures on September 9, 1988. The referee's written decision first identified two underlying issues upon which claimant would have to prevail before her claim for monetary benefits would be successful:

(1) Whether or not Claimant suffered an accident as the term is defined in I.C. § 72–102(14)(b) on May 15, 1987;

(2) Whether or not Claimant has an injury as that term is defined in I.C. § 72–102(14)(a)(c).

R. 16. The referee's proposed decision contained a thorough presentation of the underlying facts:

Claimant commenced work at J.R. Simplot Company, Employer, on May 10, 1987. At that time she had not worked outside the home for approximately two years. On May 10, 1987, Claimant and other new hires underwent 'orientation.' The following day, May 11, was Claimant's first day of work. Her shift began at 4:00 p.m. and ended at midnight. When she arrived at work, she was placed on the 'trim line' until her first break at approximately 5:15 p.m. On the trim line the workers can sit or stand as they choose while they cut bad spots out of the potatoes. After first break Claimant was sent upstairs (third floor) to the inspection line where she had to stand on a platform in order to reach the product which moved past her on a conveyor belt. She watched the product move past and removed below-standard french fries, performing these duties for approximately two hours. Claimant then went downstairs for lunch break. Between returning from lunch and second break (10:00 or so), Claimant again worked on the trim line. After second break, Claim-

ant returned to the inspection line. She completed her shift without difficulty and went home. The second day of work, May 12, Claimant worked all 7½ hours on the trim line, where she could sit or stand as she chose. After completing this day's work without incident, she again returned to her home. On May 13, 1987 when she arrived at the facility, she was placed on the trim line. After first break, she was told to go up to the inspection line, where she had been on May 11. Claimant did so and again stood on the platform to perform her work. After approximately two hours, Claimant experienced a sharp pain in the region of her left hip. She continued to work until relieved for her lunch break. She had to slowly descend the stairs, as her leg felt heavy, painful, and 'strange.' After lunch, she worked on the trim line. When the lead lady told Claimant she was to go on second break, then report to the inspection line, Claimant asked to speak to her. Claimant explained she did not feel she could go upstairs as her leg hurt and if she went up she was afraid she could not get back down again. She was permitted to finish her shift on the trim line. Claimant's left hip and leg were painful while driving home and she had difficulty sleeping that night. The next day she telephoned Employer to ask which physician she should go to and was told Dr. Paul McConnel; Claimant also informed Employer at that time she was quitting her job. Claimant's testimony was that she felt this was necessary as she would be unable to perform 'all phases' of her job and it was her understanding that this was a requirement of employment. At all times relevant hereto, Claimant's job duties were protected by Idaho's Workmen's Compensation Act and Employer was properly self-insured under said laws.

Claimant was examined by Dr. McConnel on May 14, 1987. Claimant was tender starting at S1 extending into the sciatic outlet and into [her] left knee. Dr. McConnel diagnosed 'neuritis, probably sciatica.' He prescribed anti-inflammatory medication (Naprosyn) and Claim-

ant was to return on May 26, 1987. Claimant did so. Her pain had only mildly relented. The doctor's diagnosis that day was sciatica; hip strain; and diabetic. At that time the doctor signed a work release from May 14 through May 26, 1987, and said Claimant could return to work on May 27 with no prolonged standing or climbing stairs. The physician wrote three notes to the Employer's adjustor, Shirley Tulk, wherein he opined Claimant's sciatica was probably an exacerbation of a previous disease (diabetes) but definitely caused by her work. Dr. McConnel testified Claimant's problem was an 'overuse syndrome' caused by her standing, even though it was only for approximately two hours, given her diabetes and other problems.

Claimant has also been seen by Ercil Bowman, M.D., an orthopedist, on April 24, 1987 [referee meant 1988]; Theodore Schwartz, M.D., an endocrinologist, on March 28, 1988; and Stephen Asher, M.D., a neurologist, on July 1, 1988. Dr. Bowman rendered no diagnosis or opinion regarding causation. Dr. Schwartz's opinion was that Claimant's hip and leg pain 'could well be a manifestation of diabetic neuropathy' but this needed a neurologic evaluation to document; that Claimant's pain quite likely was related to the fact she was diabetic; and that she could have developed the same pain without having been in the work place, but the question remained opened as to whether work was an initiating or exacerbating factor. Dr. Asher feels a precise diagnosis is not possible; Claimant's problem could be either diabetic radiculopathy or mechanical radiculopathy due to disc disease or osteoarthritis; he recommended an MRI, or CT scan and myelogram to 'hopefully clarify the diagnosis and allow for appropriate treatment.'

One area of controversy is whether the inspection line area 'vibrates.' Claimant testified she felt a mild vibration, like a hum. Defendant's manager of loss prevention (a safety engineer), Herman Teich, testified the area does not vibrate. The Referee finds this dispute to be inconsequential, as Dr. McConnel testified

he does not feel the 'vibration' to be a factor in his opinion or diagnosis; and, as Mr. Teich testified, often a high noise level could create a perception of vibration.

The Referee finds, based on the record as a whole, that Claimant did not suffer an industrial accident on May 13, 1987. R. 16–20.

The conclusions of law prepared and proposed by the referee were also well stated and supported by citation to case precedent and statutory provisions:

The Idaho Workmen's Compensation Law defines accident to mean an unexpected, undesigned, and unlooked for *mishap*, or untoward *event*, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred causing the injury. An injury is construed to include only an injury *caused by an accident* which results in violence to the physical structure of the body. Injury means a personal injury *caused by an accident* arising out of and in the course of employment covered by the Workmen's Compensation Law. § 72–102(14) Idaho Code. Since the Idaho Supreme Court rejected the 'unusual exertion standard' and adopted the usual exertion standard in determining whether an injury resulted from an accident, the distinction between *an accident and an injury* has become increasingly unclear and commingled, *see Wynn v. J.R. Simplot*, 105 Idaho 102, 666 P.2d 629 (1983); *Hazen v. General Store*, 111 Idaho 972, 729 P.2d 1035 (1986); and *Johnson v. Bennett Lumber Company*, 87 Opinion No. 79, 86 IWCD 43 (July 7, 1987) as representative. The Industrial Commission, through the doctrine of *stare decisis*, has faithfully followed the Supreme Court's direction, *see McKay v. Champion Home Builders*, 87 IWCD 29 (March 2, 1987); *Huffaker v. Red Lion Motor Inn Riverside*, 87 IWCD 35 (March 17, 1987); *Cox v. Great Western Transportation*, 87 IWCD 114 (September 22, 1987); *Brooks, et al v. Standard Fire Insurance Company*, 88 IWCD 62 (June 24, 1988); and *Urizar v. Boise Cascade Corporation*, IC 87–588901 (August 26, 1988) as representative. Undoubtedly, part of the blurring is caused by the Industrial Commission and Supreme Court's efforts to compensate deserving workers whose injuries are caused by 'repetitive' trauma. Under Title 72, such workers have no 'event' or 'mishap', so their case would fail under an accident theory, yet they are also unable to make a claim under the 'occupational disease' section of the Act. Increasingly, the cases seem to be finding 'an accident' whenever there is an onset of pain while at work, and totally ignore the statutory requirement of an event or mishap. If a worker's compensation claimant shows he or she experienced some violence to the physical structure, the inquiry stops, and *ipso facto* an accident is found to have occurred. But, by definition in the code, an injury, to be compensable, must have been brought about by *an accident*. An example of the complete confusion caused by this blurring and commingling of the terms is set forth in Claimant's argument:

... Claimant herein must point out that Defendant Employer herein has never developed any evidence to demonstrate that Claimant did not suffer the injury as she has described. Nor does there appear to be any legal basis for claiming *that the injury, described by Claimant, did not qualify as an 'accident'* under the Idaho worker's compensation law.... (Opening Brief, p. 22, paragraph II) (Emphasis added.) *Claimant contends that the untoward event or unlooked-for mishap in this situation is found in the fact that claimant suffered an injury while on the job. Claimant's sudden onset of pain at about that time is proof that the stresses of the labor required caused an anatomic or pathological change in Claimant's body causing an injury.* (Claimant's Reply Brief, p. 5) (Emphasis added.) Claimant misses the point. She argues that because she can 'reasonably locate a time' for her onset of pain, she has shown under *Wynn, Hazen,* and their progeny an accident occurred. That is

not the true issue; the focus of this inquiry is whether or not standing for approximately two hours constitutes 'an unexpected, undesigned, and unlooked for *mishap* or untoward *event.*' The Referee concludes an injured worker must do more than show an onset of pain while at work in order to sustain his or her burden of proving an *event or mishap* occurred, despite the aforementioned decisions by the Commission (including ones by the same Referee) and the Supreme Court. Without more than an onset of pain, every time a worker developed an onset of cluster headaches while at work he or she would be entitled to worker's compensation benefits. The Referee concludes standing for two hours does not an accident make. Hence, Claimant has not sustained her burden of proving she suffered 'an accident,' that is some type of event or mishap and not solely an onset of pain, which would entitle her to worker's compensation benefits.

R. 6–9 (emphasis in original).

The Court on its review of that decision concludes that there was no error committed by the referee or by the Commission in adopting the referee's proposed decision. Hence, we affirm the Commission and award costs on appeal to respondent.

BOYLE, J., concurs in the result.

BAKES, C.J., sat but did not participate.

JOHNSON, Justice, concurring specially.

While I concur in the Court's opinion, the use of the Commission's conclusions of law as the rationale for our decision deprives the opinion of reference to more recent decisions of this Court that I find to be dispositive.

The Commission's decision was dated September 9, 1988. The decision cites our opinion in *Johnson v. Bennett Lumber Co.*, No. 16523, Opin. No. 79 (Idaho July 7, 1987). In that version of the *Johnson* opinion, the Court reversed the decision of the Commission in which the Commission concluded that the claimant's condition was not caused by an accident. The employer and its surety petitioned for rehearing, which the Court granted. Following rehearing, the Court issued a new opinion

affirming, rather than reversing, the Commission's decision. *Johnson v. Bennett Lumber Co.*, 115 Idaho 241, 766 P.2d 711 (1988).

In the final version of *Johnson*, the Court noted that the claimant has the burden of proving not only that the claimant was injured, but also that the injury resulted from an accident arising out of and in the course of the claimant's employment. *Id.* at 244, 766 P.2d at 714.

In 1989, we issued our opinion in *Vernon v. Omark Indus.*, 115 Idaho 486, 767 P.2d 1261 (1989) (*Vernon II. Vernon I* is reported at 113 Idaho 358, 744 P.2d 86 (1987).) In *Vernon II*, the Court reiterated the claimant's burden of proof as stated in *Johnson.* The Court upheld the Commission's decision that the claimant had failed to sustain the burden of proving that the claimant suffered an accident connected with the claimant's employment that caused the claimant's injury. 115 Idaho at 488, 767 P.2d at 1263.

I base my concurrence with the Court's decision in this case on *Johnson* and *Vernon II.*

McDEVITT, J., concurs.