858 P.2d 744

**Debi KOESTER, Claimant–Appellant,**

v.

**State of Idaho, Community Action Program, Department of Health & Welfare, Employer, Defendant,**

**STATE INSURANCE FUND, Defendant–Respondent.**

**No. 19610.**

Supreme Court of Idaho,
Coeur D'Alene, May 1993 Term.

Aug. 27, 1993.

Cooke, Lamanna, Smith & Cogswell, Priest River, for appellant. Nicholas M. Lamanna, argued.

Larry EchoHawk, Atty. Gen., Boise, and Randall, Blake & Cox, Lewiston, for respondent. Jay P. Gaskill, argued.

SILAK, Justice.

Debi Koester sought worker's compensation benefits for two separate injuries: the first was Lyme disease from an alleged tick bite, and the second was a back injury from a fall, both of which she claimed occurred during the course of her employment as a homemaker for the State of Idaho Community Action Program (Action), who carried workers' compensation insurance through the State Insurance Fund (State Fund). Koester appeals from the Industrial Commission's order adopting the findings and conclusions made by a Commission referee that State Fund was not liable for the injury allegedly resulting from an insect bite.

## FACTS AND PROCEDURAL BACKGROUND

Koester went to work for Action in the first part of 1988 as a home care provider. Koester's duties included entering the homes of elderly persons who were either confined or needed help caring for themselves. One of her clients was an elderly woman who lived in a small trailer outside of Potlatch, Idaho, along with as many as twenty-five cats, which were not allowed outside the home. The home was in a deplorable condition.

One day during the first two weeks of May 1988, while cleaning this client's bed, Koester felt an itching sensation on the inside of her left ankle. She did not immediately look at the spot, but loaded up the soiled linen and advised the client that she was leaving to take the bedding to the laundromat. Koester then looked down and noticed that she had "got a bite." Koester did not see what bit her, nor did she "actually feel the bite initiate." The bite produced continual itching and a discolored inflammation about two to three inches in diameter. She applied a local antibiotic ointment and the inflammation disappeared after two weeks. The day after the bite, Koester showed the mark to a co-worker, a secretary, and her work supervisor at Action and reported that she had been bitten. She did not, however, report this bite to her doctor. The bite did not

affect her ability to work during that time. Within two to three months after the bite, Koester began to experience numbness and tingling in her extremities, increasingly severe headaches, irregular heart palpitations and chest pains. Koester's physician at the time, Dr. Carl Melina, considered the symptoms to be caused by stress from her work and family responsibilities.

Koester continued to work for Action until July 27, 1989. On that date, Koester sustained the back injury underlying her second claim. The injury occurred when she slipped and fell while cleaning the home of a client. Koester went to an orthopedic surgeon, Dr. Graeme French (French), for treatment of her back injury. Initially, French diagnosed Koester with a sprained sacroiliac. However, after she responded negatively to therapy, French made additional inquiries into Koester's health. French inquired into Koester's medical history and found symptoms of severe headaches, loss of sensation in her extremities, swelling in her lymph glands, and pain in her muscles and joints. French had tests performed from which he concluded that Koester's symptoms were probably caused by a neuroborreliosis infection and diagnosed chronic Lyme disease. He concluded further that the pain which Koester continued to experience in her back and left leg was largely attributable to Lyme disease, not solely the back injury she suffered when she fell in July of 1989. State Fund had been paying Koester disability benefits for her back injury; however, after French reported that Koester's continuing disability was most likely caused by Lyme disease, State Fund denied her any further benefits.

Koester subsequently filed two applications for hearing seeking to recover benefits for her first injury (Lyme disease) which she alleged resulted from an accident (tick bite) she suffered on the job in May 1988, and for her second injury (back) when she fell at work in July 1989. Koester's claims were consolidated and heard by a referee on April 18, 1991. In the findings of fact, conclusions of law, and proposed order, the referee found that Koester had failed to meet her burden of showing that her first disability resulted from an injury which occurred in the course of her employment. Therefore, the referee concluded it was not necessary to determine whether Koester had Lyme disease.

The referee concluded that Koester could not identify what bit her, or when, and it was impossible to ascertain whether the insect bite which caused the Lyme disease occurred on the job or somewhere else. Koester claimed she received the insect bite which caused her Lyme disease which she was working the client's home described above. The referee found, however, that although the conditions in the client's home were deplorable and the client and many cats lived in filthy conditions, the evidence showed that the client was bedridden, the cats were never allowed to leave the trailer, and there was no evidence from which to infer the presence of ticks or lice in the home. During 1988, Koester and her family lived in a residential area of Potlatch with two large fir trees in the backyard, grass in the yard, lilac bushes along the side of the house, and other trees growing at the edge of town. Koester owned two outside pets and one inside pet. Koester's husband was logging during the months of May, June and July of 1988, and when he was working, he was in the woods; he started back to work after "breakup" and would return home each night after work. Based on this evidence, the referee found that Koester "may actually have been more likely to encounter ticks in her own home than" in the client's home where she claims to have been bitten. Therefore, the referee concluded, Koester had failed to meet her burden of proving that she contacted, and was bitten by, a tick or louse in the course of her employment.

Based on these findings the referee concluded that Koester was not entitled to benefits for her disabilities related to Lyme disease. The referee found, however, that Koester was entitled to the benefits she had already received for her back injury, but because she had failed to show that her continuing disability was related to her back injury and not the Lyme disease,

Koester was not entitled to any further benefits on her second claim.

These findings and conclusions were issued on September 19, 1991. On September 30, 1991, the Industrial Commission adopted and filed the referee's findings and conclusions and issued an order denying Koester's claim based upon the insect bite. Koester filed a notice of appeal on October 23, 1991.

## ISSUES

Although Koester asserts three issues on appeal, her appeal raises only one issue: whether the Industrial Commission's findings and conclusions are supported by substantial competent evidence. The other issues Koester raises concern the medical diagnosis of Lyme disease and her credibility concerning her medical condition. Because the Commission did not rule on Koester's medical diagnosis, these issues are not properly before this Court and we will not address them.

## STANDARD OF REVIEW

In appeals from the Industrial Commission our review is limited to whether the Commission's factual findings are supported by substantial and competent evidence. *Neufeld v. Browning Ferris Industries,* 109 Idaho 899, 902, 712 P.2d 600, 603 (1985); IDAHO CONST. art. V, § 9; I.C. § 72–732. The determination whether an injury arose from the course of employment is a question of fact. *Id.* This determination requires the weighing of evidence and assessing the credibility of witnesses, and the Commission's conclusions as to weight and credibility will not be disturbed unless they are clearly erroneous. *Id.* While the Workers' Compensation Act is to be construed liberally in favor of the injured employee, *Steinebach v. Hoff Lumber Company,* 98 Idaho 428, 431, 566 P.2d 377, 340 (1977), a claimant has the burden of proving a probable, not merely a possible, causal connection between the employment and the injury or disease. *Neufeld,* 109 Idaho at 902, 712 P.2d at 603.

## KOESTER FAILED TO PROVE HER INJURY WAS JOB RELATED

Koester argues that "the medical evidence did prove that [she] was bitten" on the job and that "in all probability" the insect bite that she received in May 1988, occurred in the course of her employment. To support her arguments, Koester's brief cites extensively from the depositions of her doctors; however, she failed to provide this Court with a record that included the depositions. The record before us shows that Koester presented testimonial evidence wherein she states, "[w]hen I got the bite, I was in the home of Kathryn Edar, I was stripping her bed. I didn't actually feel the bite initiate." In addition, she testified that the bite became inflamed and produced a patchy discolored spot around the bite which lasted approximately two to three weeks after the bite was discovered.

State Fund argues that there was no direct evidence of when or by what Koester was bitten. To support its argument State Fund points out the following: Koester merely noticed for the first time what she alleged was a bite while she was cleaning a client's home. She never actually saw what bit her. There was no evidence from which to infer the presence of ticks or lice in the client's home. The only insects Koester ever testified she observed in the home were flies. Further, the client was bedridden and her pets were never allowed to leave the trailer. On the other hand, Koester's home had two large fir trees in the backyard, lilac bushes next to the home, grass in the yard, two outside pets, and one inside pet. She lived on the edge of town where other trees were growing nearby. Koester's husband was a logger who, at the time in question, worked each day in the woods and came home each night, and Koester and her family also went camping during this time. Finally, State Fund concludes, even if Koester was bitten by a tick, the circumstantial evidence shows that Koester more likely would have been bitten in her own home than on the job.

The case of *Roe v. Boise Grocery Company,* 53 Idaho 82, 21 P.2d 910 (1933),

relied on by the Commission, is instructive. Charles Roe died of Rocky Mountain Spotted Fever. The Industrial Accident Board (IAB) found that Roe contracted the fever from a tick bite which Roe received while in the course of his employment. While the tick bite was discovered when Roe was at home, the Court held that the evidence was sufficient to sustain the IAB's finding that Roe was bitten on the job. The evidence showed the following: (1) Roe was a traveling salesman who was considered to be "on the job" from the time he left his home in Boise until he returned, sometimes several days later; (2) Roe's sales routes took him through rural areas of Idaho and Oregon in which there were ticks that carried the fever virus; (3) Roe found a tick embedded in his leg the morning after he returned home from a sales trip during which he had spent a number of hours gathering rock in the sage brush to help get his car out of a mudhole; (4) this bite was inflamed and showed signs of being infected when it was discovered; (5) after spending one night at home, Roe traveled on personal business to Mountain Home without getting out of his car before he returned; (6) Roe then made a business trip to Bruneau, stopping briefly to visit his daughter; (7) upon his return home, Roe discovered a bite on his shoulder blade; (8) Roe entered a hospital shortly thereafter with the fever; and finally (9) Both tick bites were discovered within the incubation period for the fever.

■ Although *Roe* presents the opposite circumstance, in that Roe discovered the tick bites when at home and Koester discovered a bite on the job, it is helpful to analyze and compare the evidence in both cases. The *Roe* Court reviewed evidence of: the physical characteristics of tick bites; the characteristics of the disease; Roe's job requirements and how they would bring Roe into contact with a carrier tick; where Roe had been during the incubation period prior to the tick bites; and when Roe noticed the tick bites. The Commission properly utilized *Roe* to support its findings that Koester had not met her burden.

The Commission concluded that there were "[n]o such compelling facts" in Koester's case. The Commission's findings conclude that Koester never found or saw any tick on her leg, let alone embedded in her leg. There was no evidence of ticks or lice in the home where she noticed the bite. Koester presented no evidence to show how long she had been at the home or had been on the job at another home. However, there was evidence that her husband was a logger who worked in the woods and came home each night, and that Koester had outside pets at her home which was at the edge of a rural town. Finally, Koester did not "actually feel the bite initiate"; thus the referee concluded that it was "impossible to ascertain" where and when she was bitten. We agree with State Fund's argument that these findings and the Commission's conclusions should be upheld because they were supported by substantial competent evidence.

While Koester's testimony about where she noticed being bitten raised the possibility that she was bitten in the course of her employment, she failed to put on any other evidence such as that viewed as sufficient in *Roe*, to strengthen her contention that in all probability the bite occurred at her workplace. The record before this Court shows no evidence concerning the incubation period of Lyme disease; how long after a bite symptoms become evident; how long she had been at work before she noticed the itching; whether itching is an immediate reaction to a tick bite; or whether ticks that carry Lyme disease are prominent in the Potlatch area. Additionally, Koester was not diagnosed with Lyme disease until approximately eighteen months after she noticed the bite on her leg.

In conclusion, unlike the situation in *Roe*, where extensive testimony eliminated other possible sources of infection by both time and place, Koester failed to eliminate any other possibilities. Therefore, we hold that there is substantial competent evidence to support the Commission's findings and conclusions that Koester failed to meet her burden of proving she received a bite which

allegedly caused Lyme disease in the course of her employment.

McDEVITT, C.J., JOHNSON, J., JUDD, J. Pro Tem., concur.

BISTLINE, Justice, specially concurring.

I agree with the majority's inevitable conclusion that substantial and competent evidence supports the referee and Commission's conclusion that Koester failed to meet her burden of proof as to her injury occurring within the scope of her employment. This special concurrence is to express my unease at the referee's overall approach and to suggest some changes in the way workers' compensation cases are appealed to the Commission.

In the summer of 1992 the Court issued its opinion in *Trapp v. Sagle Volunteer Fire Dept. v. State Insurance Fund*, 122 Idaho 655, 837 P.2d 781 (1992). That controversy bore interesting similarity to Debi Koester's present action and is noteworthy for the fact that the *final* decision there, as here, was authored by referee John Bauman. As inferentially noted in the opinion of Justice Silak, the Industrial Commission did *not* preside nor participate at the hearing where evidence was presented by Debi Koester. It rather assigned that task to Mr. Bauman. As the Court's opinion points out, in Koester's case Mr. Bauman fashioned the findings of fact, conclusions of law, and proposed order for the signature of the Commissioners:

> [T]hat Koester had failed to meet her burden of showing that her first disability resulted from an injury which occurred in the course or scope of her employment. Therefore, the *referee* concluded, it was not necessary to determine whether Koester had Lyme disease.
>
> The *referee* concluded that Koester could not identify what bit her, or when, and it was impossible to ascertain whether the insect bite which caused the Lyme disease occurred on the job or somewhere else. The referee found that although the conditions in the client's home were deplorable and the client and many cats lived in filthy conditions, the evidence showed that the client was bedridden, the cats were never allowed to leave the trailer, and there was no evidence from which to infer the presence of ticks or lice in the home. During 1988, Koester and her family lived in a residential area of Potlatch with two large fir trees in the backyard, grass in the yard, lilac bushes along the side of the house, and other trees growing at the edge of town. Koester owned two outside pets and one inside pet. Koester's husband was logging during the months of May, June and July of 1988, and when he was working, he was in the woods; he started back to work after 'breakup' and would return home each night after work. Based on this evidence, the referee found that Koester '*may actually have been more likely to encounter ticks in her home than in the client's home where she claims to have been bitten.*' Therefore, the referee concluded, Koester had failed to meet her burden of proving that she contacted, and was bitten, by a tick or louse in the course or scope of her employment.

Op. at 207–208, 858 P.2d at 746–747 (emphasis added). The referee is readily seen as overindulging in the mere surmise that Koester was more apt to encounter ticks in her home than in the home of the bedridden woman with "many cats living in filthy conditions." The purported finding which the referee wrote suggesting that "Koester may have been more likely to encounter ticks in her own home than in the client's home" is naught but sheer and whimsical speculation, and is of questionable necessity in resolving the claimant's case. The Commission, in its merely accepting and adopting the views of its referee, is seen as rather lackadaisical.

Bauman, however, was not lax in performing his assigned function of writing a set of findings of fact, *fifty-seven* to be exact, followed by seven conclusions of law. His performance concluded with his recommendation "that the entire Commission adopt the following proposed Order" (which he had drafted) consuming but approximately fifteen lines, and which fa-

vored claimant Koester very little, if any. There is no way of knowing to what extent, if any, the Commission labored in its review of the referee's findings and conclusions. Unlike the *Trapp* controversy, cited above, where *two* referees participated as hearing officers, with input from both, here Mr. Bauman was solely in charge with free rein to write as he chose.

That foregoing observation suggests the further thought that there may be good reasons, presently existing, for considering an entirely new format for hearings on industrial accident claims different from the current format, where the Commission performs no function other than, as here, to await the referee's report of his findings and conclusions and favorably adopt and approve the same, or not do so. As illustrated by the case at hand, it is becoming more and more clear that the Workers' Compensation Act, as presently administered, may not be directed at providing the sure and certain relief to the worker, which was the legislature's promise in enacting the Workers' Compensation Act of 1971.

Far better, it is seriously suggested, that controversies such as the instant *Koester* case and the prior *Trapp* case should require further hearings before the Commission itself by way of or on appeal from the referee's decision; there competent counsel other than the attorneys who appeared as such at the referee's hearing would actually advance, first, the case for the claimant, and second, the case for the defense. Perhaps a third participant, a wholly neutral but well-informed compensation counsel, would round out a trio of experts which would be well positioned to furnish the Commission with a wholly neutral recommendation.

Speaking only for myself, in the year 1992 and now this year of 1993, there is good reason for concern as to workers' compensation claims decisions which essentially are, as here, the product of one person's views, knowledge, and ability. Hopefully, a better day will arrive when three referees, if not three Commissioners, not only decide, but preside, as well. Here in Koester's case that day had not arrived.

There was a time during my practice when that was generally the existing format. Here the entire presentation of claimant's case and then surety's case was presided over by just one person, referee Bauman. He then wrote out the Commission's decision; it was readily adopted by the Commission.

In the view of this one member of the Court, that is an awesome responsibility to have affixed on one person, the referee. It would be indeed interesting to see the decision that would result from a mock trial of the issues which were presented to referee Bauman, as decided by a panel of surety's attorneys in opposition to a panel of claimant's attorneys, perhaps three to a side.