866 P.2d 969

Leslie ROBERTS, Claimant–Appellant,

v.

KIT MANUFACTURING COMPANY, INC., Employer, Defendant–Respondent.

No. 20128.

Supreme Court of Idaho, Boise, Sept. 1993 Term.

Dec. 23, 1993.

Rehearing Denied Feb. 3, 1994.

Robert L. Jackson, Caldwell, for claimant-appellant.

Brady Lerma Thomas, Chartered, Boise, for defendant-respondent. Michael E. Powers argued.

McDEVITT, Chief Justice.

### FACTS

In March of 1988, Leslie Roberts ("Roberts") worked as a shipping and receiving clerk for Kit Manufacturing Company ("Kit"). His job involved loading and unloading items Kit used in the manufacture of recreational vehicles. According to Roberts,

the nature of his job with Kit had not changed for the approximately ten months he worked there before March 22, 1990.

Roberts spent the afternoon of March 22, 1990, unloading windows and refrigerators at Kit. Although Roberts alleges an injury-causing accident took place on this date, he experienced no pain or other symptoms of an injury that day. Roberts testified that when he woke up the following morning, Friday, March 23, 1990, there was some pain between his shoulder blades and in his arm and hand. Despite this, Roberts went to work on that day and performed his normal duties of loading and unloading heavy items.

Because of the pain in his back and arm, Roberts began treatment with Dr. Kranz Monday, March 26, 1990. Dr. Kranz is a chiropractor who previously treated Roberts for back pain in May 1988. Roberts maintains that the earlier injury and the pain he began experiencing on March 23, 1990, are unrelated.

After several apparently unsuccessful attempts at conservative therapy, Roberts began treatment with Dr. Henbest, a Boise neurosurgeon. Dr. Henbest operated on Roberts, noting that Roberts had suffered both an earlier injury and recent trauma to the C5–6 and C6–7 vertebrae. Roberts' symptoms completely subsided after the operation.

### PROCEEDINGS BELOW

Roberts first notified one of his supervisors that he was experiencing back pain on March 26, 1990, when he requested time off to be treated by Dr. Kranz. The first time Roberts declared that he suffered a work related accident was March 30, 1990. On May 7, 1990, Roberts filed a notice of injury and claim for benefits with Kit, which denied his claim. Roberts filed an application for a hearing with the Industrial Commission ("Commission") on November 27, 1990. Roberts claimed to have suffered an accident while working for Kit on March 22, 1990, which resulted in an injury.

A referee heard Roberts' claim on December 31, 1991. In his findings of fact, conclusions of law, and proposed order, the referee recommended that the Commission deny Roberts' claim. The referee concluded that Roberts did not prove that the alleged injury arose out of and in the course of his employment. The referee further concluded that, even if Roberts could have proven his injury was work related, he did not sustain an "accident" within the meaning of I.C. § 72–102(15). The Commission concurred in the referee's recommended findings of fact and conclusions of law, and adopted them as its own. On appeal, Roberts contends that the Commission's denial of compensation is not supported by substantial and competent evidence, and that the Commission erred by finding that Roberts did not suffer an accident.

### STANDARD OF REVIEW

Whether an injury arose from the course of employment is a question of fact to be decided by the Commission. *Koester v. State*, 124 Idaho 205, 858 P.2d 744 (1993); *Neufeld v. Browning Ferris Indus.*, 109 Idaho 899, 902, 712 P.2d 600, 603 (1985). This Court reviews the Commission's findings of fact exclusively to determine whether substantial and competent evidence supports those findings. I.C. § 72–732(1). This Court does not scrutinize the weight and credibility of the evidence relied upon by the Commission, but construes that evidence in the light most favorable to the party prevailing before it. *Darner v. Southeast Idaho In–Home Serv.*, 122 Idaho 897, 900, 841 P.2d 427, 430 (1992). We will disturb the Commission's findings regarding weight and credibility only if they are clearly erroneous. *Koester*, 124 Idaho at 208, 858 P.2d at 747; *Darner*, 122 Idaho at 900, 841 P.2d at 430 (1992).

### ANALYSIS

Roberts had the burden of proving that there was a probable causal link between his employment and the injury for which he seeks relief. Proof of a possible causal link is not sufficient to satisfy this burden. *Koester*, 124 Idaho at 208, 858 P.2d at 747; *Neufeld*, 109 Idaho at 902, 712 P.2d at 603. In an attempt to prove the existence of this link, Roberts relies heavily upon a

letter Dr. Henbest wrote to Roberts' attorney. We cannot conclude that this letter establishes that Roberts' injury was related to his employment.

Dr. Henbest did not state that he believed to a reasonable degree of medical probability that Roberts' injury was work related. Several times throughout the letter Dr. Henbest qualified his ability to speculate about what caused Roberts' injury. Although his conclusions are supportive of Roberts' claim, Dr. Henbest voiced uncertainty about their merit. Dr. Henbest repeatedly noted that he relied entirely on Roberts' account of what happened as the basis for his conclusions. Because Dr. Henbest's conclusions did not use the usual formulation for a medical opinion, i.e., belief to a reasonable degree of medical probability, the Commission did not err by requiring that the opinion rise to the level of plainly and unequivocably conveying the physician's conviction that the injury is work-related. *See Paulson v. Idaho Forest Indus.*, 99 Idaho 896, 901, 591 P.2d 143, 148 (1979).

The Commission's superior position from which to judge the weight and credibility of evidence is the cornerstone of our deference to their findings. *Neufeld*, 109 Idaho at 902, 712 P.2d at 603. Dr. Henbest's hesitance severely impugned the weight the Commission was willing to afford his conclusions. Roberts has not shown that the rationale the Commission applied to determine the proper weight to afford Dr. Henbest's conclusions was clearly erroneous. Resolving all reasonable inferences that can be drawn from Dr. Henbest's testimony in the light most favorable to Kit, we conclude that the Commission's finding in this regard is not clearly erroneous.

Roberts' own testimony adds little support for the proposition that he suffered an injury through the course of his employment. Roberts testified that the symptoms first appeared the morning after he allegedly hurt himself at work. He provided the Commission with no evidence showing that anything extraordinary happened to him while working the day before his symptoms appeared. His relevant testimony merely proved that, at some point between when he went to bed and woke up the next morning, he began experiencing pain. Roberts presented no direct evidence that his injury was work related. The Commission's conclusion that Roberts did not prove a probable causal link between the injury and his employment is supported by substantial and competent evidence.

### CONCLUSION

There is substantial and competent evidence to support the Commission's findings and conclusion that Roberts failed to prove he suffered an employment related injury. The Commission's order denying Roberts' claim for compensation is affirmed.

Because we affirm the portion of the Commission's order that holds Roberts did not suffer a work related injury, this Court need not address the question of whether the injury was the result of an accident within the meaning of I.C. § 72–102(15)(b).

Costs to respondent on appeal.

JOHNSON, TROUT and SILAK, JJ., concur.

BISTLINE, Justice, dissenting.

### I. The Facts of Leslie Roberts' Case

I respectfully dissent. The record in this case illustrates that the referee, who essentially decided the fate of Leslie Roberts' claim for workers' compensation benefits, clearly erred in according little weight and credibility to the testimony of Roberts' medical experts and compounded that error with the gross ruling that Roberts had not suffered a work-related injury and accident within the meaning and intent of Idaho Code § 72–105. For these reasons, the decision of the Commission should be reversed and the cause remanded to it for reconsideration of the findings and conclusions of the referee.

It is important to relate the facts of this case more thoroughly than did the majority. The record reveals that Leslie Roberts had worked for Kit Manufacturing Company for approximately ten months as a shipping and receiving clerk, where his duties consisted of receiving, unloading and moving heavy items

such as refrigerators, pallets of nails, plumbing supplies, and windows. Contrary to the majority's bare assertion that Roberts' duties had remained consistent throughout this period of employment, Roberts testified that the volume of his work, lifting and moving heavy items, had increased over the last three to four months prior to the onset of his injury. On March 22, 1990, Roberts performed his usual lifting and moving at work without incident; he did not perform any physically demanding tasks after leaving his place of employment. Upon waking the next morning, Roberts became aware of acute pain between his shoulder blades and in his left arm and hand and apparently some paralysis in his left arm. Despite the pain, Roberts reported for work at Kit Manufacturing again that day, *which activity exacerbated the pain and paralysis.* This evidence, taken alone, strongly suggests that Roberts' pain was indeed work-induced.

Roberts immediately sought medical attention. After several sessions with a chiropractor and the Roberts' family physician, which did not alleviate the pain, Roberts turned to Dr. Michael L. Henbest, a Boise neurosurgeon. Dr. Henbest conducted a neurological examination and diagnosed cervical radiculopathy. Dr. Richard Wilson, a Boise neurologist, ordered that Roberts undergo a MRI, which disclosed that Roberts had herniated discs at the C5–6 and C5–7 vertebrae and cord compression. Two days after first seeing Roberts, Dr. Henbest performed surgery on Roberts; his notes depicted that Roberts suffered from calcification of the ligament and osteophytic processes (a result of previous trauma) and from *significant soft tissue disc herniation, a result of recent trauma.*

When Roberts sought the benefits which are available under the Worker's Compensation Act, the Industrial Commission remained aloof and set Roberts' hearing before a referee. The referee, in making findings of fact, conclusions of law, and proposed order, noticeably paid only lip service to the well-recognized axiom that the Act is to be construed liberally in favor of claimants in keeping with its remedial and beneficient purposes, but then ignored this rule and recommended that the Commission deny Roberts'

claim, basing that denial on his own conclusion that Roberts had not met his burden of proof. The Commission readily adopted the referee's recommendation as its decision, and the majority of this Court, after a cursory analysis, has affirmed. At no point does it appear that the commissioners either individually or collectively allowed themselves the benefit of hearing testimony and observing the demeanor of testifying witnesses.

## II. The Role of the Referee

A moment is taken to first reiterate the concerns that I have with the current procedures of the Industrial Commission, which were articulated in *Koester v. State,* 124 Idaho 205, 858 P.2d 744 (1993). As in *Koester,* a lone referee heard this case, sifted through the documents, and arrived at factual findings, legal conclusions, and a recommended order. The Commission, in adopting the work product of the referee, apparently did conduct a de novo review; however, the questionable legal and factual analysis accepted by the Commission on the referee's recommendation is suggestive that the Commission's role was indeed less than fully involved. As stated in *Koester,* this practice cannot be otherwise than of profound concern to the practitioners who represent injured workers. Far better would it be that the commissioners provide the parties with the opportunity of presenting further argument by counsel for the involved litigants. Only in that manner can it then be truthfully said that the Commission's ultimate decision is the product of their becoming fully informed. Put more directly, the decision of a referee should not automatically become the decision of the Commission. The referees over the years generally have been very capable and experienced, but nevertheless, the final administrative decision is to be made by the Commission, subject only to review by the Idaho Supreme Court. Recollection informs me that on occasion in the past only one of the commissioners has presided where the Commission itself has so ordered, but in that manner the other commissioners are fully informed. If that is not the case, it is certain within probability that they can and do have tape recording capability, which would allow absent commissioners to review-

ing hearings which they may have been unable to attend. Given the deferential standard which this Court must employ in reviewing the actions of the Commission and which are mandated by the Idaho Constitution art. V, § 9 and Idaho Code § 72–732, the decisions made by the referees and the Commission are of critical importance to injured employees and their families. Such responsibility, in my mind, would rest far more comfortably on several sets of shoulders than on just one referee.

### III. Did Roberts Prove an "Injury?"

The majority correctly restates the standard by which we review the Commission's findings of fact: we uphold such findings when they are supported by substantial and competent evidence. This Court also reviews questions of law, however, such as are implicated in this case. See Paulson v. Idaho Forest Industries, Inc., 99 Idaho 896, 900, 591 P.2d 143, 147 (1979).

Injured employees who seek compensation must first prove to their employer and the Industrial Commission that their injury was work-related and then that an injury was the result of an accident. The referee in this case determined that Roberts did not meet the first prong of this test, largely because Roberts was unable to produce a witness who had been with Roberts during the onset of the injury. As with any other claimant who lacks direct evidence, Roberts had available for the referee's pleasure the testimony of Dr. Henbest which was presented as after-the-fact proof of the injury. Nothing to which Dr. Henbest testified was based on speculation, but on his medical findings.

This procedure posed no problem for the referee hearing this case; very little weight was accorded to Dr. Henbest's testimony because of the referee's personal view that the requisite degree of medical probability was lacking. However, there was no lack of evidence before the referee. The referee was exposed to the views of Dr. Henbest and his opinion of Roberts' symptoms, consisting of letters exchanged between Roberts' attorney and Dr. Henbest plus Dr. Henbest's sworn deposition.

The letter from Roberts' attorney to Dr. Henbest stated, in relevant part:

Thank you for the opportunity to visit with you regarding this case ... It was my understanding after our meeting that you have the opinion that, "more likely than not" or to put it in other words "probably," the pain Mr. Roberts felt in the area of his neck and left arm and the corresponding numbness and tingling in his left hand were sustained as a result of work on approximately March 22, 1990. Further, you opined that he did even further injury to himself approximately March 28, 1990, while again at work moving heavy items. Briefly, in note form, can you explain what Leslie physically did to the cervical area of his spine during those few days at work in March of 1990? ...

Roberts' attorney did not ask Dr. Henbest to indicate his opinion of the probability that Roberts' injury was work-related; he asked the doctor for a brief medical description. In his reply of July 23, 1990, Dr. Henbest obliged, writing:

I have received a letter from you dated July 11, 1990, in which you request a brief note to explain what type of injury Leslie Roberts sustained in March of 1990. At this point in time, I must point out that I was not with Mr. Roberts in March of 1990, and therefore I am reliant on his history to describe what probably occurred with his neck. According to Mr. Roberts, he was moving heavy items at work and sustained increasing symptoms in his neck. What undoubtedly was happening, if the history is correct, is that the neck muscles were tightening up due to the fact that there was compression of the disc space causing protrusion of disc material up around the dura, which is the lining around the spinal cord and nerve root, and protrusion of the disc actually up against the nerve root. This caused inflammation and caused further spasm in the neck muscles, which undoubtedly caused the disc to rupture. Again, I was not with Mr. Roberts, and I am constructing this from the history that he gave me.

As to the findings at surgery, in regard to whether or not this was a recent injury or

an exacerbation of a preexisting condition, although there was definitely some calcification of the ligament and some osteophytic processes, *there was also a significant amount of soft tissue disc herniation* at the time of surgery. The soft disc [condition] had been of a recent onset, though there was obviously previous trauma in regard to the calcified ligament and osteophyte. Therefore, I *found both a preexisting condition and an acute problem.* The acute problem; i.e., the soft disc rupture, seemed to be the most significant problem.

(Emphasis added.)

In answering questions put to him in the deposition interrogation, Dr. Henbest described soft disc herniation.[1] Dr. Henbest testified that a disc ruptures over a relatively short period of time and that a person whose disc ruptures may experience the associated symptoms either immediately or within two or three days.

The referee gave little weight to Dr. Henbest's statements on Roberts' behalf. The referee's exact comment was: "the doctor's testimony and records offer careful and qualified statements which are expressly predicated on Claimant's own account of his history. *This is far from being evidence which 'plainly and unequivocally' conveys the physician's 'conviction' that Claimant's injury is work-related.*" We have never required such a standard; indeed, our cases have recognized that medical doctors speak in terms of probabilities, not in terms of convictions or certainties. *See, e.g., Bowman v. Twin Falls Construction Co.,* 99 Idaho 312, 317, 581 P.2d 770 (1978). The referee relied upon and apparently misinterpreted our language in *Paulson v. Idaho Forest Industries, Inc.,* wherein we stated that "no special verbal formula is necessary when, as here, a doctor's testimony plainly and unequivocally conveys his conviction that events are causally

related." *Paulson,* 99 Idaho at 901, 591 P.2d at 148. The testimony at issue in *Paulson* went to a very different causal relationship, however, than the relationship to which Dr. Henbest testified. In *Paulson,* the doctor testified that many persons who have undergone surgery experience traumatic neuroses and that the neuroses of the claimant about whom he testified were a result of the claimant's prior surgery. The Commission inferred from the testimony, and this Court agreed, that the doctor believed that the neuroses of claimant Paulson resulted from surgery. *Paulson* did not require, as referee Bauman apparently thought that it did here, that a physician's testimony express a *conviction* that a claimant's injury was *work-related.* The referee subsequently "found" that in his view, Dr. Henbest's testimony failed to satisfy Roberts' burden of proof; in light of referee Bauman's misapprehension of our statements in *Paulson,* the low level of credibility accorded to Dr. Henbest's testimony was clearly erroneous. One cannot help pausing to suggest that had the controversy been placed before a jury, it would have readily agreed that there was not the slightest impeachment of Dr. Henbest's medical conclusions. Medical practitioners have no reason to prevaricate, nor do they fabricate.

The majority today compounds the referee's error by stating that the Industrial Commission may require a doctor to hold a plain and unequivocal conviction that a claimant's injury is work-related, when the doctor has not formulated the magical phrase "reasonable degree of medical probability." In my view, *Paulson* does not allow the Commission to increase its standard in this manner. Instead, *Paulson* merely stated that when the doctor does not state the legalistic phrase "reasonable degree of medical probability," his or her testimony may be examined to ensure that he or she nonetheless does believe, to a reasonable degree of medical probability, that an event caused the claimant's

---

1. In particular, Dr. Henbest stated that: "When a disk ruptures, part of it starts pushing out, causing an increasing amount of symptoms, neck pain, muscle tightness, maybe some development of arm pain, and then progressively gets worse as the disk further compresses the nerve root and causes further inflammation of the nerve root ... we have patients who wake up in the morning with severe disk ruptures. It happened sometime during the night, but, you know, it didn't wake them up ... *Or it happened the day before, and they didn't really pay any attention to it. And they went to bed that night feeling okay, and the next morning they have the severe radiculopathy* [the symptoms described above]." (emphasis added).

injury. *Paulson*, 99 Idaho at 901, 591 P.2d at 148. A conviction on the part of the testifying doctor only erases the need for scrutiny of the testimony; it is certainly not the standard required.

Not only did the referee clearly err in applying the wrong standard of proof to Dr. Henbest's testimony, he clearly erred in according little credibility to such testimony. The testimony of Dr. Henbest established that he believed, to a reasonable degree of medical probability, that Roberts' workplace activities caused his ruptured disc.

A physician who begins to treat a claimant more than a month after the claimant experiences an injury cannot be expected to independently know what precise event caused the injury or on what precise date the injury occurred. He or she necessarily relies on the history provided by the claimant himself and on any other available information. Dr. Henbest unequivocally testified that Roberts' symptoms were consistent with the history provided by Roberts and his own findings, and his letter asserted that, *if Roberts were lifting heavy items, the resulting spasms in his neck muscles undoubtedly caused the disc to rupture*. Since it is *undisputed* that Roberts engaged in heavy lifting at his place of employment, and did not do so engage himself outside of work, it is obvious that spasms in his neck muscles at that time caused the ruptured disc. Although Dr. Henbest did not state the phrase "reasonable degree of medical probability," his testimony and written letter meet that standard.

Moreover, *the referee did not point to any evidence, substantial and competent or otherwise, that would support a finding that Roberts was or might have been injured other than at work*. Worker's compensation cases affirming the denial of workers' compensation benefits have properly relied on the non-employment-related activities or contacts which were the likely cause of an injury. *See, e.g., Hagler v. Micron Technology, Inc.*, 118 Idaho 596, 598, 798 P.2d 55, 57 (ringworm fungus on employee's hands was likely caused by ringworm on her feet); *Koester v. State*, 124 Idaho at 901, 858 P.2d at 748 (employee's Lyme disease was likely caused by ticks present in her own home).

The referee concluded that, as to the first prong under which a claimant must prove that his injury was work-related, Roberts did not meet his burden of proof. The Court today should plainly rule that the referee misinterprets this Court's case law in construing the Act against Roberts. The opinion for the Court compounds this error when, in noting that Roberts presented no direct evidence to the Commission to prove that his injury was work-related, it adds that Roberts "provided the Commission with no evidence that anything extraordinary happened to him while working the day before his symptoms appeared." This unfortunate sentence blurs the line between the first hurdle faced by an injured claimant, which was that the injury was work-related, and the second hurdle, that the work-related injury stemmed from an accident. A claimant may be injured at work, and may prove this without pointing to an event or "extraordinary" occurrence. To prove the second prong, that an *accident* precipitated the injury, however, the claimant must prove an event or mishap. This Court has previously reminded attorneys and the Commission that these are wholly separate lines of inquiry. *See, e.g., Perez v. J.R. Simplot Co.*, 120 Idaho 435, 437, 816 P.2d 992, 994 (1991).

## IV. Did an "Accident" Occur?

The referee assumed that in light of *his* decision, that Roberts failed to prove that he had sustained a work-related injury, it was unnecessary to address the further question of whether Roberts had proved that such injury resulted from an "accident," within the meaning and intent of I.C. § 72–105(15). Nevertheless, the referee put himself to the exercise of conducting just such an analysis, and concluded therefrom that Roberts' testimony at the hearing did not support a conclusion that he had experienced "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." The actual fact of the matter is otherwise.

The referee arrived at his decision by relying on our opinion in *Perez v. J.R. Simplot*

*Co.*, where we said that an employee cannot prove that an accident (or an unexpected event) occurred merely because of experiencing pain in the hip after standing in one place for two hours. *Perez v. J.R. Simplot Co.*, 120 Idaho at 438, 816 P.2d at 995. An accident must be something more; it must "result in violence to the physical structure of the body." *Id.*, 120 Idaho at 437, 816 P.2d at 994 (citing referee conclusions of law). Roberts' case fills that billing, and is distinguishable from *Perez.* Roberts did not merely experience pain; rather he was the victim of an unexpected event that resulted in injury to the physical structure of his body, the rupturing of his disc. As Dr. Henbest testified, a disc which ruptures within a short span of time can be reasonably located both as to time and to place. Surely, beyond cavil, a ruptured disc is an unexpected event within the purview of the Worker's Compensation Act.

The referee also determined that nothing in the record warranted the inference that a recent traumatic event, rather than the calcified ligament or osteophytic processes which apparently had occurred over a long period of time, caused Roberts' pain. To the contrary, Dr. Henbest's testimony and his letter specifically warrant, in fact, demand such inferences, in that Dr. Henbest asserted that the ruptured disc was Roberts' "most significant problem" and that Roberts' pain and paralytic symptoms were consistent with diagnosis of a *ruptured disc.*

Finally, the referee mundanely asserted and the Commission blithely bought into the proposition that "it is nothing more than bootstrapping to attempt to argue that since someone had pain one day, he must therefore have had an accident ... at some earlier time to cause that pain." It is true that the Commission and this Court expressly rejected such arguments in *Perez v. J.R. Simplot Co.*, 120 Idaho 435, 816 P.2d 992. But this is not the scenario now before this Court. Dr. Henbest, both by his letters in the record and by his testimony given in a deposition taken by the defendants, was not refuted in the slightest, and at this point is and remains unrefuted. Roberts can point to a precise mishap, the rupturing of his disc, as an after-math of extremely hard physical work, which presently remains as the uncontroverted explanation for his resultant symptoms of paralysis and pain.

For all of these reasons, unless the Worker's Compensation Act is to be scrapped, the Commission's decision should be reversed with directions that the full Commission reconsider. If the decision of the referee affirmed by the Commission is left in place, then the message which goes out to the working populace in Idaho is clear: The promise of sure and certain relief under the act was but a hollow promise.